24213

Ralph T. JONES, Jr. individually and as personal representative of the Estate of Alice D. Jones, deceased, Appellant v. Ralph S. OWINGS, M.D., Respondent.

(456 S.E. (2d) 371)

Supreme Court

*L. Joel Chastain* and *Desa A. Ballard*, of *Ness, Motley, Loadholt, Richardson & Poole*, Barnwell, and *Thomas D. Rogers*, of *Ness, Motley, Loadholt, Richardson & Poole*, Charleston, *for appellant.*

*Ernest J. Nauful, Jr.* and *Andrew F. Lindemann*, of *Ellis, Lawhorne, Davidson & Sims*, Columbia, *for respondent.*

Heard January 3, 1995.

Decided March 13, 1995.

TOAL, Justice:

Ralph T. Jones, Jr. (Jones), personal representative of Alice Jones' (Decedent) estate, claims the trial judge erred in failing to apply the "loss of chance" doctrine to this medical malpractice case. We disagree and affirm.

## FACTS

In October 1987, Ralph Owings (Owings), a licensed physician and specialist in orthopedic surgery, treated Decedent for

a fractured left femur. Decedent had a preoperative chest x-ray on October 27, 1987. The radiology report by James P. Ashley, M.D. noted an abnormality in the left upper lung and recommended follow-up x-rays or a CT scan. On October 10, 1988, Dr. Ashley performed another preoperative chest x-ray. Dr. Ashley's report indicated "probable scarring left upper lobe" and a CT scan was recommended. It is alleged that no action was taken by Owings following these reports. In September 1989, Decedent was diagnosed with lung cancer and she died on June 18, 1990 as a result of lung cancer.

Jones, personal representative of Decedent's estate, brought this action for wrongful death and survival alleging that Owings was negligent and willful in failing to inform decedent of Dr. Ashley's reports, in failing to follow up on Dr. Ashley's recommendations, and in failing to diagnosis her lung cancer. Owings answered the complaint with a general denial and interposed several affirmative defenses. Thereafter, Owings made a motion for summary judgment on the issue of proximate causation.

Jones presented the deposition of Dr. Martin W. Lee. Dr. Lee stated that at the time of the first x-rays in October 1987, Decedent's chance of survival would have been approximately fifty percent. At the time of the second x-ray, Decedent had a twenty to twenty-five percent survival rate. However, when the cancer was diagnosed in September 1989, Descendent had a fifteen to twenty percent chance of survival.

Based upon Dr. Lee's testimony the trial judge found that if Decedent's lung cancer had been diagnosed and treated in October 1987 when she received her first chest x-ray, she would not have had a better than fifty percent chance of survival. The trial judge granted Owings' motion for summary judgment finding Jones had not met the burden of proof required to show that any breach of duty on Owing's part proximately caused Decedent's death. This appeal followed.

## LAW/ANALYSIS

In South Carolina a medical malpractice plaintiff who relies on expert testimony must introduce evidence that the defendant's negligence *most probably* resulted in the injuries alleged. *Sherer v. James*, 290 S.C. 404, 407, 351 S.E. (2d) 148, 150 (1986). A medical malpractice plaintiff's

proof is equally as stringent as that required of plaintiffs in other negligence actions. *Id.* at 408, 351 S.E. (2d) at 151 (*citing Hanselmann v. McCardle,* 275 S.C. 46, 267 S.E. (2d) 531 (1980)).

Jones contends the Decedent's injury was her "loss of chance of survival" rather than her death and, therefore, the trial judge erred in applying the "most probably" standard to the decedent underlying disease and death, rather than to the injury itself. We disagree.

The "loss of chance" doctrine has been the subject of considerable debate among courts and commentators. *United States v. Cumberbatch,* 647 A. (2d) 1098, 1100 (Del. 1994). In the context of medical malpractice, the "loss of chance" doctrine permits a recovery when the delay in proper diagnosis or treatment of a medical condition results in the patient being deprived of a less that even chance of surviving or recovering. *Kilpatrick v. Bryant,* 868 S.W. (2d) 594, 599 (Tenn. 1993) (citation omitted). In general, courts have adopted three approaches when addressing the "loss of chance" doctrine: 1) the traditional approach which rejects the "loss of chance" doctrine, 2) the relaxed causation approach,[1] and 3) the proportional approach.[2] *See Cumberbatch,* 647 A. (2d) at 1100.

---

[1] The relaxed causation approach permits recovery when the plaintiff establishes a "substantial possibility of causation." *See McKellips v. Saint Francis Hosp., Inc.,* 741 P. (2d) 467 (Okla. 1987). A number of courts adopting this method have relied on Section 323 of the Restatement (Second) of Torts, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's persons or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if:
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

*See Hamil v. Bashline,* 481 Pa. 256, 268-69, 392 A. (2d) 1280, 1286 (1978). Several courts have adopted the relaxed causation approach. *See e.g. Thompson v. Sun City Community Hosp., Inc.,* 141 Ariz. 597, 688 P. (2d) 605 (1984); *Aasheim v. Humberger,* 215 Mont. 127, 695 P. (2d) 824 (1985); *McKellips v. Saint Francis Hosp., Inc.,* 741 P. (2d) 467 (Okla. 1987); *Hamil v. Bashline,* 481 Pa. 256, 392 A. (2d) 1280 (1978); *Thornton v. CAMC, Etc.,* 172 W.Va. 360, 305 S.E. (2d) 316 (1983).

[2] The proportional approach compensates the lost chance of survival, rather than the death itself. Under this approach the victim is entitled to a proportion of the total amount of death-related damages reflecting the reduction of the victim's chance of survival. *Cumberbatch,* 647 A. (2d) at 1100-101.

In rejecting the "loss of chance" doctrine the Ohio Supreme Court held:

> Lesser standards of proof are understandably attractive in malpractice cases where physical well being, and life itself, are the subject of litigation. The strong intuitive sense of humanity tends to emotionally direct us toward a conclusion that in an action for wrongful death an injured person should be compensated for the loss of any chance of survival, regardless of its remoteness. However, we have trepidations that such a rule would be so loose that it would produce more injustice than justice. Even though there exists authority for a rule allowing recovery based upon proof of causation by evidence not meeting the standard of probability, we are not persuaded by their logic.
>
> We consider the better rule to be that in order to comport with the standard of proof of proximate cause, plaintiff in a malpractice case must prove that defendant's negligence, *in probability*, proximately caused the death.

*Cooper v. Sisters of Charity of Cincinnati, Inc.*, 27 Ohio St. (2d) 242, 251-52, 272 N.E. (2d) 97, 103 (1971) (citations omitted).[3]

Professor Joseph King developed this approach in his article, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences*, 90 Yale L.J. 1353 (1981). King's thesis is that

> the loss of a chance of achieving a favorable outcome or of avoiding an adverse consequence should be compensable and should be valued appropriately, rather than treated as an all-or-nothing proposition. Preexisting conditions must, of course, be taken into account in valuing the interest destroyed. When those preexisting conditions have not absolutely preordained an adverse outcome, however, the chance of avoiding it should be appropriately compensated even if that chance is not better than even.

*Id.* at 1354.

Several courts have adopted this approach. *See e.g. DeBurkarte v. Louvar*, 393 N.W. (2d) 131 (Iowa 1986); *Delaney v. Cade*, 255 Kan. 199, 873 P. (2d) 175 (1994); *Wollen v. DePaul Health Ctr.*, 828 S.W. (2d) 681 (Mo. 1992) (en banc); *Perez v. Las Vegas Medical Center*, 107 Nev. 1, 805 P. (2d) 589 (1991); *Herskovits v. Group Health Coop.*, 99 Wash. (2d) 609, 664 P. (2d) 474 (1983).

[3] A substantial number of other jurisdictions have also rejected the loss of chance doctrine. *See e.g. Grody v. Tulin*, 170 Conn. 443, 365 A. (2d) 1076 (1976); *United States v. Cumberbatch*, 647 A. (2d) 1098 (Del. 1994); *Gooding v. University Hosp. Bldg. Inc.*, 445 So. (2d) 1015 (Fla. 1984); *Manning v. Twin Falls Clinic & Hosp., Inc.*, 122 Idaho 47, 830 P. (2d) 1185 (1992); *Fennell v. Southern Maryland Hosp., Ctr.*, 320 Md. 776, 580 A. (2d) 206 (1990); *Fabio v.*

After a thorough review of the "loss of chance" doctrine, we decline to adopt the doctrine and maintain our traditional approach. We are persuaded that "the loss of chance doctrine is fundamentally at odds with the requisite degree of medical certitude necessary to establish a causal link between the injury of a patient and the tortious conduct of a physician." *Kilpatrick*, 868 S.W. (2d) at 602. Legal responsibility in this approach is in reality assigned based on the mere *possibility* that a tortfeasor's negligence was a cause of the ultimate harm. *Kramer v. Lewisville Memorial Hosp.*, 858 S.W. (2d) 397, 405 (Tex. 1993). This formula is contrary to the most basic standards of proof which undergird the tort system. Accordingly, we find the trial judge properly held Jones did not establish Owings' alleged negligence most probably caused Decedent's death. *See Sherer v. James*, 290 S.C. 404, 351 S.E. (2d) 148 (1986).

Affirmed.

FINNEY, C.J., MOORE and WALLER, JJ., and A. LEE CHANDLER, Acting Associate Justice, concur.

*Bellomo*, 504 N.W. (2d) 758 (Minn. 1993); *Ladner v. Campbell*, 515 So. (2d) 882 (Miss. 1987); *Pillsbury-Flood v. Portsmouth Hosp.*, 128 N.H. 299, 512 A. (2d) 1126 (1986); *Kramer v. Lewisville Memorial Hosp.*, 858 S.W. (2d) 397 (Tex. 1993).