56 F.3d 60
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Sharon BROWN, Administratrix of the Estate of Ronnie Lee
Brown, deceased, Plaintiff-Appellant,
v.
R. ODOM, individually and as police officer of the police
division of the City of Spartanburg Public Safety
Department; Terrt Gory, individually and as police officer
of the police division of the City of Spartanburg Public
Safety Department; Michael Woodcock, individually and as
police officer of the police division of the City of
Spartanburg Public Safety Department, Defendants-Appellees.
 No. 94-1566.
 United States Court of Appeals, Fourth Circuit.
 Argued April 6, 1995.
Decided June 5, 1995.
 
 ARGUED: Mary P. Miles, LAW OFFICES OF MARY P. MILES, Columbia, SC, for Appellant. Andrew Frederick Lindemann, ELLIS, LAWHORNE, DAVIDSON & SIMS, P.A., Columbia, SC, for Appellees. ON BRIEF: William H. Davidson, II, Elizabeth N. Keenan, ELLIS, LAWHORNE, DAVIDSON & SIMS, P.A., Columbia, SC, for Appellees.
 D.S.C.
 AFFIRMED.
 Before MURNAGHAN, HAMILTON, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The Spartanburg, South Carolina police, responding to a call regarding a forgery in progress, attempted to apprehend Ronnie Lee Brown, who was exiting the store in which the crime had taken place. After a chase, Brown was arrested and brought by the police to the city jail. He complained of being hot and of having trouble breathing, and his mother indicated that he suffered from asthma. After consulting with a supervisor, the officer who had transported Brown to the police station took him to the hospital, where Brown later died of acute respiratory arrest. Brown's representative brought an action against the officers who initially chased Brown and those who took him to the hospital, claiming a violation of the Due Process Clause based on their deliberate indifference to Brown's serious medical needs. The district court granted summary judgment to the defendants, and the plaintiff has appealed.
 
 
 2
 On June 19, 1990 at approximately 4:07 p.m., the Spartanburg Public Safety Department dispatched Officers Rozanne Odom and Terry Gory to the Mister Money establishment at 418 West Main Street in Spartanburg, South Carolina to respond to a possible forgery in progress. When the officers arrived at the scene, Brown, an individual who fit the description of the suspect, was exiting the store. As Gory approached Brown, Brown began to run. Gory chased him on foot, but then lost sight of him behind a car dealership; Odom pursued Brown by car at the same time, but also lost track of him. While other officers continued to search for the suspect, Gory and Odom returned to the store to take an incident report. Gory then dropped Odom off at her patrol vehicle, and when an officer reported having spotted the suspect, Gory resumed his pursuit of Brown by car. Brown was apprehended at approximately 4:45 p.m. by Officer Christopher Banks, and Gory arrived at the scene soon after to assist in the arrest.
 
 
 3
 Banks turned Brown over to the custody of Gory and Officer Michael Woodcock. Brown complained of being tired and "appeared winded," and Banks and Woodcock helped him walk the approximately eighty yards to Gory's patrol car. Brown's mother, Shirley Rice, showed up on the scene while Brown was being put into Gory's patrol car, and followed the police to the city jail. On the way to the jail, Brown complained of being hot, and Gory opened the windows and turned on the air conditioner. Gory and Rice helped Brown from the patrol car upon their arrival at the jail, and when Brown complained that he could not breathe, Gory sat him down on the floor inside the jail. According to the detention supervisor, Bonita Smith, Brown fell down when Gory brought him in, and Brown and his mother were yelling at the officers to take off his handcuffs; Brown was breathing heavily while the officers stood beside him. Smith refused to accept Brown into the jail and suggested that he be checked by a doctor, based on Rice's contention that Brown was having an asthma attack. However, Smith also testified that what she observed of Brown's condition did not seem to correspond to Brown's mother's assertions regarding asthma.
 
 
 4
 At approximately 5:00 p.m., Gory went to speak to his supervisor, Lieutenant C.E. Ridgeway, and informed him that Brown was complaining of having trouble breathing. He told the Lieutenant that Rice had said that Brown had asthma but that he did not take medication. At approximately 5:06 p.m., Gory took Brown in his patrol car from the city jail to the Spartanburg Regional Medical Center. Woodcock followed in his own car; he stated in his affidavit that during the trip to the hospital, he saw Brown sit up and look around several times in the back seat of Gory's car. They arrived at the hospital at approximately 5:12 p.m., and Gory and Woodcock helped Brown into the hospital through the back entrance of the emergency room, where prisoners are taken; Brown could not walk by himself. They laid Brown on the floor in the emergency room and told a doctor about Brown's condition. The officers then carried Brown into another room and placed him on a stretcher and removed his handcuffs.
 
 
 5
 According to Gory, approximately thirty minutes later,
 
 
 6
 a female hospital employee asked me where the suspect's chart was. I explained how the suspect came to be in the room and stated that I did not think a chart had been filled out. She walked in the room briefly. When leaving, she appeared mad. About two or three minutes later, another female entered the suspect's room and attempted to get information from him. The suspect did not respond. I attempted to get a response, but he just looked up.
 
 
 7
 Gory left the room to report to Ridgeway, and when Brown was checked on again, he had no pulse or respiration. Resuscitation attempts failed, and Brown was pronounced dead at 7:23 p.m.* An autopsy conducted the next morning revealed cocaine and cocaine metabolites in Brown's urine, but no cocaine metabolites in his blood. Dr. J. David Wren, the pathologist at the Spartanburg Regional Medical Center who completed Brown's autopsy report, was surprised at the lack of metabolites in the blood, but opined that the long interval between the suspect's death and autopsy, as well as the period of time before analysis, might account for the degradation of cocaine metabolites in the blood. In his report, Wren wrote the following:
 
 
 8
 In view of the history of asthma in this individual, an extensive search through medical records has been performed. A possible asthmatic attack was noted approximately five years prior to this episode but none since that time. Addi-
 
 
 9
 tionally, investigation by the Coroner with the family reveals no visits to a physician recently for asthmatic complaints. Finally, there was no gross or microscopic evidence of asthma thus an asthmatic attack is essentially eliminated.
 
 
 10
 Based on the history and autopsy findings as stated in this protocol, it is my opinion that this individual died as a result of acute respiratory arrest secondary to cocaine ingestion.
 
 
 11
 (emphasis added). Rice testified at her deposition that she never told the police about Brown's use of cocaine.
 
 
 12
 On May 27, 1993, Sharon Brown, as the personal representative of Brown's estate, brought an action under 42 U.S.C. Secs. 1983 and 1988 in the United States District Court for the District of South Carolina. She named as defendants in both their official and individual capacities Officers Rozanne Odom, Terry Gory, and Michael Woodcock, alleging a violation of the Due Process Clause of the Fourteenth Amendment due to the officers' deliberate indifference to Brown's serious medical needs. On February 25, 1994, the defendants moved for summary judgment, which was granted on March 25, 1994 as to all defendants in both their official and individual capacities. The district judge ruled that "Brown's personal representative has shown absolutely no evidence that the police officers involved acted with deliberate indifference to Brown's serious medical needs."
 
 
 13
 Our review of the record satisfies us that the district judge was correct, and we affirm the grant of summary judgment. A claim of deliberate indifference to serious medical needs would require a greater showing than was made here, even if it were to be assumed that Brown's medical needs were serious and that a finding of negligence on the part of one or more defendants could be supported by the evidence. See Daniels v. Williams, 474 U.S. 327, 328 (1986); Estelle v. Gamble, 429 U.S. 97, 106 (1976).
 
 
 14
 Less than one-half hour elapsed between the time Brown was apprehended and the time the officers arrived with him at the hospital. While in some situations, a delay of one-half hour could constitute deliberate indifference, such was not the case here, because the police had no reason to believe that the delay would put Brown in danger.
 
 
 15
 Considering the information available to the police, their decision to bring him to the jail from the site of the arrest rather than bringing him directly to the hospital was not unreasonable. There was no proof that the police deliberately delayed taking Brown to the hospital after realizing that he was experiencing trouble breathing and should be examined by a doctor. In addition, the fact that the officers used a police car to transport Brown to the hospital instead of summoning a rescue vehicle, and the fact that they themselves took him into the hospital instead of waiting for a litter or a stretcher, in no way showed that they were indifferent to his medical needs. The police reacted as quickly as was warranted to the situation as they perceived it.
 
 Accordingly, the judgment is
 
 16
 AFFIRMED.
 
 
 
 *
 The actual time of death may have been as early as 6:20 p.m