Margaret CROSBY, individually and as personal representative of the Estate of Robert Crosby, deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. A95–359 CV JWS.

United States District Court,
D. Alaska.

April 9, 1999.

Michael W. Flanigan, Walther & Flanigan, Anchorage, AK, for Crosby, Margaret M.

Kenneth S. Roosa, U.S. Attorney's Office, Anchorage, AK, for United States of America.

### ORDER FROM CHAMBERS

[Re: Motion to Dismiss—Docket 100]

SEDWICK, District Judge.

### I. MOTION PRESENTED

At docket 100, defendant United States of America ("United States") moves to dismiss plaintiff Margaret Crosby's ("Crosby") claim for loss of chance.[1] Crosby opposes the motion. Earlier, this court certified the relevant questions of law to the Alaska Supreme Court, which declined to accept certification.[2] On return from the Alaska Supreme Court, the parties adopted their original motion papers. Oral argument was heard on April 9, 1999.

### II. BACKGROUND

This is a medical malpractice case filed under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. ("FTCA" or "Act").

1. The United States does not specify the procedural basis for its motion. This court will treat it as a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

2. Alaska Supreme Court Order, November 5, 1998, docket 91.

3. Complaint, docket 1, filed September 14, 1995, ¶¶ 12–16 at 3–5.

Robert Crosby suffered a heart attack on March 7, 1992, while working for a government contractor, Piquniq Management Corporation ("Piquniq"), on Amchitka Island where Piquniq maintained two camps for the United States Navy. Robert died on May 14, 1992, in Oregon while awaiting a heart transplant. Crosby's complaint alleges medical malpractice proximately caused Robert's death or, "in the alternative, the lessening of the likelihood of Robert Crosby's survival from his heart attack."[3] The United States argues that under Alaska law, Crosby may not recover for "loss of chance."

### III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. A claim should only be dismissed if "it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[4] A dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[5] In reviewing a Rule 12(b)(6) motion to dismiss, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[6] The court is not required to accept every conclusion asserted in the complaint as true; rather, the court "will examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff."[7]

4. *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir.1997).

5. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988).

6. *Vignolo*, 120 F.3d at 1077.

7. *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir.1992) (quoting *Brian Clewer, Inc. v. Pan American World Airways, Inc.*, 674 F.Supp. 782, 785 (C.D.Cal.1986)).

## IV. DISCUSSION

This court must decide whether a claim for "loss of chance" may be maintained in a medical malpractice action under Alaska law. There is no reported Alaska decision on point.[8] This court must predict how it thinks the Alaska Supreme Court would decide the question.

### A. Loss of Chance Doctrine

■ Stated broadly, the "loss of chance" doctrine in medical malpractice actions permits plaintiffs to recover damages for the reduction in the odds of recovery attributable to a defendant, even if the failure to recover cannot be shown to have been proximately caused by the defendant's negligence.[9] Proximate cause, of course, includes both cause in fact and legal cause. Cause in fact traditionally requires proof by a preponderance of evidence. Plaintiffs must establish that their injury was more likely than not caused by the defendant's negligence. Failing such proof, traditional concepts preclude a plaintiff from recovering. Speaking generally, the loss of chance doctrine permits some recovery even if the plaintiff cannot establish cause in fact by a preponderance of the evidence, so long as plaintiff can establish that defendant's negligence reduced the chance of recovery from the injury or illness.

Most courts and commentators analyzing "loss of chance" theories group them in three general categories.[10] The "substantial factor" standard permits plaintiffs to recover by showing that there was a substantial possibility or chance of a better outcome. It is not necessary to establish that the defendant's negligence more likely than not caused the injury. It is only necessary to establish that the defendant's negligence was a substantial factor in causing the injury. The Restatement standard permits plaintiffs to recover when they can establish that a defendant's negligence increased the risk of harm by any degree. It is based on Restatement (Second) of Torts, Section 323 which provides:

§ 323 Negligent Performance of Undertaking to Render Services

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting

8. At least two state superior courts have faced this issue and reached different results in unreported decisions. In *Miller, et al. v. Dubin, et al.*, 1JU–93–855 Civil, the Superior Court for the State of Alaska at Juneau concluded that plaintiffs could not maintain a claim for "loss of chance" under Alaska law. *See* Order, July 1, 1994 (submitted as exhibit 1 at docket 49). In *Kearney, et al. v. Deal, et al.*, 3AN–89–9188 Civil, the Superior Court for the State of Alaska at Anchorage concluded that plaintiffs should be entitled to a jury instruction addressing their "loss of chance" claim so long as there was sufficient evidence to support the claim. *See* Order, October 7, 1993 (submitted as exhibit 2 at docket 49).

9. As will be discussed in greater detail further below, there is no uniform "loss of chance" doctrine. Instead, courts recognizing a theory of recovery for "loss of chance" have established varying rules concerning causation and damages. The seminal authority advocating adoption of "loss of chance" is Professor King's 1981 article. *See* Joseph H. King, *Causation, Valuation and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences*, 90 Yale L.J. 1353 (1981). Two annotations collect cases. *See* John D. Hodson, Annotation, *Medical Malpractice: 'Loss of Chance' Causality*, 54 A.L.R.4th 10 (1987); Martin J. McMahon, Annotation, *Medical Malpractice: Measure and Elements of Damages in Actions Based on Loss of Chance*, 81 A.L.R.4th 485 (1990).

10. *See generally, Jones v. Owings*, 318 S.C. 72, 75 nn. 1–3, 456 S.E.2d 371, 373 nn. 1–3 (1995); Daniel J. Andersen, *'Loss of Chance' in Utah?*, 9–NOV Utah B.J. 8, 8–9 (1996); Lisa Perrochet, Sandra J. Smith, and Ugo Colella, *Lost Chance Recovery and the Folly of Expanding Medical Malpractice Liability*, 27 Tort & Ins.L.J. 615 (1992); Jonathan P. Kieffer, *The Case for Across–the–Board Application of the Loss–of–Chance Doctrine*, 64 Def. Couns.J. 568, 568–69 (1997); Patrick I. Evatt, *A Closer Look at Loss of Chance Under Nebraska Medical Malpractice Law*, 76 Neb.L.Rev. 979, 983–88 (1997).

from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.[11]

Under the Restatement standard, any percentage of loss can create a jury question.[12] There is no need for a finding that the alleged negligence substantially increased the risk of harm. The third standard is the "pure loss of chance" standard. Under the "pure" standard, plaintiffs may recover for the loss of chance, itself, and not the ultimate injury. The "pure" standard therefore creates a new cause of action. Depending on one's perspective, the "loss of chance" doctrine seeks to ameliorate the harsh result of applying rigid causation principles by allowing plaintiffs to recover for some percentage of injuries caused by a defendant, or the doctrine represents an unwise departure from traditional negligence concepts and introduces a measure of speculative uncertainty into medical malpractice lawsuits which will increase health care providers' incentives to employ tests and procedures deemed necessary to avoid malpractice claims, rather than to select tests and procedures through the exercise of sound medical and surgical judgment

A rough count reveals that a majority of jurisdictions recognize some form of a "loss of chance" theory, with 22 states recognizing the doctrine to some degree, 12 states rejecting its application, and 3 states undecided. Courts in Alabama, Arizona, Arkansas, Colorado, Georgia, Iowa, Kansas, Louisiana, Massachusetts, Michigan, Montana, Nevada, New Jersey, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, West Virginia, Washington, Virginia, and a United States District Court in Vermont have recognized claims based on "loss of chance" theories.[13] However, it is important to emphasize that courts have not always recognized the same principles to govern "loss of chance" theories.[14] Courts in Delaware, Florida,

**11.** Restatement (Second) of Torts, § 323 at 135 (1965).

**12.** Section 323 addresses duty, not causation. Commentators noting this distinction have criticized those courts which rely upon the Restatement to adopt a loss-of-chance theory. *See* Daniel J. Andersen, *'Loss of Chance' in Utah?*, 9–NOV Utah B.J. 8, 9 (1996); Lisa Perrochet, Sandra J. Smith, and Ugo Colella, *Lost Chance Recovery and the Folly of Expanding Medical Malpractice Liability*, 27 Tort & Ins.L.J. 615 (1992); *see also Kramer v. Lewisville Memorial Hosp.*, 858 S.W.2d 397, 405–6 (Tex.1993) (rejecting loss of chance theory based on Section 323).

**13.** *Murdoch v. Thomas*, 404 So.2d 580, 582 (Ala.1981); *Thompson v. Sun City Community Hosp., Inc.*, 141 Ariz. 597, 608, 688 P.2d 605, 616 (1984); *Jeanes v. Milner*, 428 F.2d 598, 604 (8th Cir.1970) (applying Arkansas law); *Boryla v. Pash*, 960 P.2d 123, 127–29 (1998); *Grabowski v. Radiology Assoc., P.A.*, 181 Ga. App. 298, 301, 352 S.E.2d 185, 187 (1986); *Wendland v. Sparks*, 574 N.W.2d 327, 333 (Iowa 1998); *Delaney v. Cade*, 255 Kan. 199, 211, 873 P.2d 175, 183 (1994); *Pfiffner v. Correa*, 643 So.2d 1228, 1230 n. 1 (1994); *Joudrey v. Nashoba Community Hosp., Inc.*, 32 Mass.App.Ct. 974, 976–77, 592 N.E.2d 769, 772 (1992); *Falcon v. Memorial Hosp.*, 436

Mich. 443, 462 N.W.2d 44, 56–57 (1990); *Aasheim v. Humberger*, 215 Mont. 127, 132–33, 695 P.2d 824, 827–28 (1985); *Perez v. Las Vegas Med. Ctr.*, 107 Nev. 1, 5, 805 P.2d 589, 591 (1991); *Kallenberg v. Beth Israel Hosp.*, 45 A.D.2d 177, 179–80, 357 N.Y.S.2d 508, 510 (1974); *Scafidi v. Seiler*, 119 N.J. 93, 112, 574 A.2d 398, 408 (1990); *Morrison v. Stallworth*, 73 N.C.App. 196, 326 S.E.2d 387, 393 (1985); *Roberts v. Ohio Permanente Med. Group, Inc.*, 76 Ohio St.3d 483, 488, 668 N.E.2d 480, 484 (1996); *McKellips v. St. Francis Hosp.*, 741 P.2d 467, 471 (Okla.1987); *Hamil v. Bashline*, 481 Pa. 256, 270–71, 392 A.2d 1280, 1287 (1978); *Griffett v. Ryan*, 247 Va. 465, 470, 443 S.E.2d 149, 152 (1994); *Herskovits v. Group Health Coop. of Puget Sound*, 99 Wash.2d 609, 614, 664 P.2d 474, 477 (1983); *Thornton v. CAMC*, 172 W.Va. 360, 368, 305 S.E.2d 316, 324–25 (1983); *Short v. United States*, 908 F.Supp. 227, 237 (D.Vt.1995) (predicting that Vermont Supreme Court would recognize "loss of chance" doctrine).

**14.** Two courts provide excellent summaries regarding different forms of "loss of chance" theories adopted by different states. *See Kilpatrick v. Bryant*, 868 S.W.2d 594, 600–02 (Tenn.1993); and *Kramer, supra*, 858 S.W.2d at 400–03.

Idaho, Kentucky, Maryland, Minnesota, Mississippi, New Hampshire, South Carolina, Tennessee, Texas, and Utah have refused to recognize "loss of chance" theories.[15] Courts in California, Illinois, and Missouri have reached conflicting results.[16]

Because "loss of chance" takes on different forms and may apply different principles, there is considerable confusion among courts and commentators as to whether "loss of chance" is recognized by a majority or a minority of jurisdictions. Some commentators maintain that the majority of jurisdictions have rejected the "loss of chance" doctrine.[17] Other courts or commentators have concluded that a clear majority of jurisdictions have adopted the "loss of chance" doctrine.[18] For present purposes, this confusion is noted to emphasize that the "loss of chance" doctrine resists precise definition and is subject to varying interpretations and different applications.

### 1. Arguments Opposed to "Loss of Chance" Theory

Traditional causation principles require plaintiffs to establish that a defendant's alleged malpractice was more likely than not the cause of injury. Permitting a plaintiff to recover in a malpractice claim where this standard cannot be met raises a direct conflict with recognized causation principles, and unless the doctrine were expanded to include others such as lawyers, real estate brokers, engineers, etc., would create an anomaly placing health care providers at a disadvantage when compared to other professionals. Moreover, the doctrine's adoption will increase claims and likely induce another medical malpractice insurance crisis. The "loss of chance" doctrine invites juries to speculate. One commentator summarizes the primary arguments opposing the "loss of chance" doctrine as follows:

1. Health care providers may be liable for non-negligent errors of judgment if patients don't improve.

2. More cases would be filed because there is always a chance of a better outcome.

3. Increased litigation would increase malpractice premiums and consumers will ultimately bear the increased costs.

4. "Loss of chance" creates a rebuttable presumption which performs much like a strict liability standard.

15. *Shively v. Klein*, 551 A.2d 41, 44 (Del. 1988); *Gooding v. University Hosp. Bldg., Inc.*, 445 So.2d 1015, 1020–21 (Fla.1984); *Manning v. Twin Falls Clinic and Hosp.*, 122 Idaho 47, 52, 830 P.2d 1185, 1189–90 (1992); *Walden v. Jones*, 439 S.W.2d 571, 574 (Ky. 1968); *Pillsbury–Flood v. Portsmouth Hosp.*, 128 N.H. 299, 304–05, 512 A.2d 1126, 1130 (1986); *Fennell v. Southern Maryland Hosp. Ctr., Inc.*, 320 Md. 776, 786–87, 580 A.2d 206, 211 (1990); *Fabio v. Bellomo*, 504 N.W.2d 758, 762–63 (Minn.1993); *Clayton v. Thompson*, 475 So.2d 439, 445 (Miss.1985); *Jones v. Owings*, 318 S.C. 72, 77, 456 S.E.2d 371, 374 (1995); *Kilpatrick v. Bryant*, 868 S.W.2d 594, 602 (Tenn.1993); *Kramer v. Lewisville Memorial Hosp.*, 858 S.W.2d 397, 398 (Tex.1993); *Andersen v. Brigham Young Univ.*, 879 F.Supp. 1124, 1130 (D.Utah 1995) (applying Utah law), *aff'd*, 89 F.3d 849 (10th Cir.1996) (unpublished table opinion).

16. *See* Hodson, Annotation, *supra*, 54 A.L.R.4th at 42–48 and 1998 supplement at 5–6.

17. Lisa Perrochet, Sandra J. Smith, and Ugo Colella, *Lost Chance Recovery and the Folly of Expanding Medical Malpractice Liability*, 27 Tort and Ins.L.J. 615 (1992); J. Stephen Phillips, *The 'Lost Chance' Theory of Recovery*, 27 NOV Colo.Law. 85 (1998).

18. *Kilpatrick v. Bryant*, 868 S.W.2d 594, 611–13 J. Daughtrey concurring in part and dissenting in part ("[T]he overwhelming weight of authority is contrary to the position taken by the majority here [rejecting adoption of the 'loss of chance' doctrine]. Courts in some 30 or more jurisdictions have permitted the recovery of damages for 'loss of chance' or 'increased risk of harm.'"); Margaret T. Mangan, *The Loss of Chance Doctrine: A Small Price to Pay for Human Life*, 42 S.D.L.Rev. 279, 291 (1997) ("Most courts which have had an opportunity to decide upon the loss of chance doctrine recognize a cause of action for loss of chance in medical malpractice actions.").

5. Medicine is not an exact science and it is impractical to require the medical profession to act as such.

6. The standard allows plaintiffs to recover even though they have little proof.

7. The tort system was never intended to compensate for every injury.

8. "Loss of chance" may not be a deterrent to negligence. There is little value in extracting a penalty from a party if it cannot be shown that the party in fact caused the result.

9. It is improper to assume that health care providers will not provide good treatment to the critically ill.

10. There will be excessive reliance on statistics at the causation stage. This is problematic since statistics are often unreliable and can mislead and be manipulated.

11. Significant changes in tort law should be left to legislatures.

12. Relaxing the standards of causation merely increases the plaintiff's odds of receiving all-or-nothing but provides no greater justice.

13. The three guiding principles of tort liability: (1) compensation and loss-spreading, (2) fairness between the parties and (3) deterrence of behavior, are not improved by the "loss of chance" doctrine. When applied, "loss of chance": (1) creates more errors in loss-spreading, (2) fairness between the parties is not satisfied, and the associated deterrence is unsubstantiated.

14. Health care providers will feel compelled to engage in extensive and perhaps unnecessary testing merely to combat the threat of malpractice.[19]

### 2. Arguments in Favor of Recognizing "Loss of Chance" Theory

The "all or nothing" approach of current medical malpractice law may work harsh results. A doctor's negligence may significantly reduce the chance of recovery, yet under the traditional approach, the plaintiff can recover nothing. The principal reasons supporting adoption of the "loss of chance" doctrine may be summarized as follows:

1. The standard promotes fairness for "close calls" where the traditional "all or nothing" can appear unfair.

2. Acts of negligence on patients with poor prognoses should not go unpunished.

3. Any loss of chance, no matter how small, has value.

4. The need to shop around for an expert who is willing to testify that the life expectancy of the patient was 51% rather than 49% is removed.

5. Presently there is no deterrence for health care providers who provide less than reasonable service to patients with less than a 50% chance of recovery.

6. Without "loss of chance," traditional notions of causation are challenged and courts feel compelled to manipulate the standards in order to avoid perceived harsh results.

7. Health care providers may be less inclined to perform a full spectrum of diagnostic tests in hopeless or less than optimistic cases.

8. If legislatures are unwilling to act in the promotion of justice, courts must take responsibility to create more equitable doctrines.[20]

### B. Medical Malpractice Under Alaska Law

Under Alaska law, the elements required to establish a claim for medical malpractice are prescribed by statute. AS 09.55.540 provides:

(a) In a malpractice action based on the negligence or wilful misconduct of a health care provider, the plaintiff has the burden of proving by a preponderance of the evidence

---

**19.** Daniel J. Andersen, 'Loss of Chance' in Utah?, 9–NOV Utah B.J. 8, 11 n. 6 (1996).

**20.** Daniel J. Andersen, 'Loss of Chance' in Utah?, 9–NOV Utah B.J. 8, 11 n. 6 (1996).

(1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of, by health care providers in the field or specialty in which the defendant is practicing;

(2) that the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and

(3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

(b) In malpractice actions there is no presumption of negligence on the part of the defendant.[21]

Alaska law embraces traditional causation principles. Plaintiffs must establish negligence by a preponderance of evidence; that is, that it is more likely than not that a defendant's alleged malpractice caused injury. The Alaska Supreme Court has ruled that AS 09.55.540 "is so clear and unambiguous that we are foreclosed from broadening the standard contained therein through judicial construction."[22] This is a wrongful death action. Under Alaska law, plaintiffs in a wrongful death action may only recover damages proximately caused by the negligent act.[23] The only compensable injuries are those resulting from the death, itself.

## C. *Analysis*

As previously noted, it appears that a majority of jurisdictions now recognize some form of "loss of chance" claims. However, in Alaska the court's obligation is not simply to count cases. Instead, the court should apply the rule of law most persuasive in light of reason, policy, and precedent. In doing so, this court should accord appropriate deference to legislative action embracing policy goals and initiatives.[24] Tort principles derive from common law and are ordinarily susceptible to judge-made tailoring. However, over the course of the last century, state legislatures have frequently enacted laws to correct perceived problems affecting tort litigation. Such tort reform measures have addressed everything from standard of care to causation to allocation of fault between contributing tortfeasors. In the development of the common law, both legislative acts and judicial decisions are entitled to respect. As the Alaska Supreme Court observed in one case, "[t]here is no hierarchical difference between common law rules which are based on statutory enactments and common law rules which are based on judicial decisions."[25]

In *Poulin v. Zartman*,[26] the Alaska Supreme Court faced the question whether it should interpret AS 09.55.540 to adopt a national standard of care for nationally certified specialists. The court was impressed with Poulin's arguments urging this construction.[27] Nevertheless, the court felt constrained by the statute's clear language to reject the argument. The court observed:

"[Poulin's] argument in this regard is a strong one. But we must reject his claim of error. There are certain limits placed upon us in the interpretation of statutes. This was dwelt upon in *Alaska Mines & Minerals, Inc. v. Alaska Indust. Bd.*, 354 P.2d 376, 379 (Alaska 1960). There we stated that if a statute is unambiguous and clearly expresses

---

**21.** AS 09.55.540.

**22.** *Poulin v. Zartman*, 542 P.2d 251, 270 (Alaska 1975), *unmodified on rehearing*, 548 P.2d 1299 (Alaska 1976).

**23.** AS 09.55.580.

**24.** *See, e.g., Hanebuth v. Bell Helicopter Intern.*, 694 P.2d 143, 146 n. 11 (Alaska 1984)

(*quoting and discussing Moragne v. States Marine Lines*, 398 U.S. 375, 392, 90 S.Ct. 1772, 1783, 26 L.Ed.2d 339 (1970)).

**25.** *Hanebuth, supra*, 694 P.2d at 146.

**26.** 542 P.2d 251 (Alaska 1975).

**27.** *Poulin*, 542 P.2d at 270.

the intent of the legislature, it should not be modified or extended by judicial construction. This was elaborated on in *State v. City of Anchorage*, 513 P.2d 1104, 1109 (Alaska 1973), where we stated that the legislative "language (must be) so unambiguous as to leave no doubt as to the meaning or scope of the result dictated." The language of AS 09.55.540 is so clear and unambiguous that we are foreclosed from broadening the standard contained therein through judicial construction."[28]

■ Here, adoption of a "loss of chance" theory would contravene the clear and unambiguous language of AS 09.55.540 in at least two ways. First, AS 09.55.540 unambiguously requires plaintiffs to establish malpractice by a preponderance of the evidence. The "loss of chance" doctrine relaxes this causation standard. Plaintiffs could recover even when it was not more likely than not that any alleged malpractice caused injury. Second, AS 09.55.540 unambiguously rejects any presumption of negligence. The "loss of chance" doctrine, however, would permit plaintiffs to pursue claims even when the defendant's action was unlikely to cause injury, so long as it reduced the chance of recovery (e.g., failure to employ a particular procedure reduced chance of recovery from 10 percent to 5 percent). At oral argument, Crosby's counsel stated a plaintiff would still have to establish the loss of chance by a preponderance of the evidence. True, but loss of chance is not an injury as that term is commonly understood. If a plaintiff's chance of recovery was reduced from 20 percent to 10 percent, then permitting recovery for that 10 percent loss enables a plaintiff to recover damages even when the plaintiff's actual physical injury was not more likely than not caused by a defendant's alleged negligence.[29] In other words, allowing recovery for the "loss of chance" allows recovery of at least some damages on account of a physical injury which probably was *not* caused by a defendant's negligence.

Having reviewed the relevant authority and considered the parties' respective arguments in light of reason, law, policy, and precedent, this court is persuaded that the Alaska Supreme Court would not recognize a cause of action for "loss of chance" in a medical malpractice setting. At least five reasons support this conclusion.

First, the "loss of chance" theory disrupts traditional causation principles set forth by statute in Alaska. AS 09.55.540 clearly and unambiguously requires plaintiffs to establish that a defendant's alleged negligence was more likely than not the cause of injury. The statute rejects any presumption of negligence. The Alaska Supreme Court has held that it is foreclosed from broadening the standards embraced by AS 09.55.540. Recognizing a "loss of chance" theory under the circumstances of this case would enable plaintiff to recover even when her injury was not proximately caused by the defendant.

Second, the "loss of chance" doctrine in medical malpractice cases involves significant and far-reaching policy concerns affecting the quality and cost of health care which are best left to the Alaska State Legislature to address and resolve. There are policy reasons supporting adoption of some version of "loss of chance." Of course, there are policy reasons for rejecting "loss of chance."[30] The fact is that the legislature affords a better forum for conducting hearings, collecting data, analyzing all of the competing concerns, and making an appropriate decision.

Third, Crosby has not identified the specific parameters of her "loss of chance" theory. As previously discussed, there is no uniform "loss of chance" doctrine. Instead, there are at least three general

28. *Id.*

29. *See Kramer, supra,* 858 S.W.2d at 405.

30. *See, e.g., Kramer, supra,* 858 S.W.2d at 404–07; *Fennell, supra,* 320 Md. at 790–94, 580 A.2d at 213–15.

types of "loss of chance" theories with many variations which have been adopted or rejected by courts. Crosby has not articulated the specific basis of her theory. A court would therefore have to answer numerous subsidiary questions regarding the nature of Crosby's claim. The Alaska Supreme Court likely would see the need to develop the details of the theory required to support her claim as an additional reason to leave creation of a new claim of this sort to the legislature.

Fourth, Crosby's action is a wrongful death suit. As the United States correctly observes, there is one compensable injury in a wrongful death action, and that is the death itself.

Fifth and finally, this court believes the Alaska Supreme Court would find decisions such as those made by the Texas Supreme Court in *Kramer*[31] and the Maryland Court of Appeals in *Fennell*[32] and the arguments summarized in section A.1 above to be more persuasive than decisions adopting some form of loss of chance and the arguments summarized in section A.2 above. In addition, the adoption of any version of "loss of chance" seems particularly ill-suited to a state like Alaska where medical care must be delivered in remote locations which cannot make all potentially beneficial tests and procedures available at anything approaching a reasonable cost.

Although not a reason for rejecting Crosby's "loss of chance" theory, it may be noted that Crosby's "loss of chance" theory is not even her primary claim. Instead, it is posed in the alternative. She may be able to recover under existing Alaska law.

## V. CONCLUSION

For the foregoing reasons, the motion at docket 100 is **GRANTED**.

**31.** 858 S.W.2d 397 (Tex.1993).

**32.** 320 Md. 776, 580 A.2d 206 (1990).