THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED 
 ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Supreme Court

 
 
 
Sharon Brown, as Personal Representative of the Estate of Ronnie Lee 
 Brown,        Petitioner,
 
 
 

v.

 
 
 
Sally Calhoun,       
Respondent.
 
 
 

ON WRIT OF CERTIORARI TO THE COURT
OF APPEALS

Appeal From Greenville County
John W. Kittredge, Circuit Court Judge

Memorandum Opinion No. 2004-MO-013
Submitted February 19, 2004 - Filed 
 April 5, 2004

REVERSED

 
 
 
Sharon Brown, of Spartanburg, pro se.
Sally G. Calhoun, of Beaufort, pro se.
 
 
 

 JUSTICE MOORE:  We granted certiorari to determine 
 whether the Court of Appeals erred by affirming the trial courts decision granting 
 respondents summary judgment motion. 
 [1]   We reverse.
FACTS
Petitioner brought this legal malpractice action against respondent, 
 attorney Sally Calhoun, based on respondents failure to file a medical malpractice 
 action against Spartanburg Regional Medical Center (SRMC) within the two-year 
 statute of limitations period.
In June 1990, officers from the Spartanburg Public Safety Department arrested 
 Ronnie Lee Brown, at approximately 4:45 p.m., after pursuing him on foot for 
 thirty minutes.  When the officers attempted to place Brown in jail, the officer 
 in charge of the jail refused to accept him because he was having difficulty 
 breathing and could not stand up.  Brown told the officers he had asthma.  The 
 officers then transported Brown to SRMC, arriving at 5:12 p.m.  Once inside 
 the hospital, the officers informed hospital personnel that Brown was complaining 
 of breathing problems and asthma.  When Brown was taken to an examining room, 
 he was unable to sit up in a chair.
At 5:50 p.m. it was discovered that Brown, who had not yet been examined by 
 medical personnel, had no pulse or respiration.  He was pronounced dead and 
 an autopsy revealed that Brown died from acute cardio-respiratory arrest due 
 to cocaine ingestion.
Shirley Rice, Browns mother, retained respondent in June 1990 to 
 prosecute all available claims arising from Browns death.  Thereafter, Rice 
 did not communicate with respondent for over two years because she was incarcerated 
 for forgery.  In the meantime, the statute of limitations for bringing an action 
 against SRMC had expired.  Shortly before her release from prison, Rice wrote 
 respondent and demanded suit be brought.  Due to Rices incarceration, petitioner 
 was appointed personal representative of Browns estate. 
In May 1993, respondent, on behalf of petitioner, filed an action in federal 
 court, pursuant to 42 U.S.C. §§ 1983 and 1988, against the officers involved 
 in Browns arrest.  Subsequently, respondents motion to withdraw as counsel 
 was granted and petitioner retained another attorney.  The District Court granted 
 the officers motion for summary judgment finding no evidence to support petitioners 
 claim that the officers acted with deliberate indifference to Browns medical 
 needs.  After firing her attorney, petitioner retained another attorney to file 
 an appeal with the Fourth Circuit Court of Appeals.  The Fourth Circuit affirmed 
 the district courts decision.  Brown v. Odom, 56 F.3d 60 (4th Cir.), 
 cert. denied, 516 U.S. 964 (1995).
In April 1996, petitioner filed a legal malpractice 
 action against respondent based on respondents failure to file a medical malpractice 
 action against SRMC within the two-year statute of limitations period.  Respondent 
 filed an answer in which she alleged that her client, Rice, disappeared and 
 respondent had no further contact with her until Rice wrote to her from jail 
 shortly before the statute of limitations was to run in June 1993. 
 [2] 
Respondent further alleged she did not believe a valid 
 cause of action existed against the hospital.  She maintained that in order 
 to prevail on the legal malpractice action, petitioner had to show she could 
 have prevailed in the action against SRMC.  Respondent stated, due to the nature 
 of cocaine-induced deaths, no expert consulted could say with any degree of 
 certainty that Brown could have been saved.
Respondent filed a summary judgment motion and submitted 
 affidavits from two physicians, one of whom performed the autopsy on Brown, 
 stating that while Browns chances of survival would have been enhanced had 
 a physician immediately seen him upon arrival at SRMC, they could not say with 
 any degree of certainty that he could have been saved.  No action was taken 
 on the motion at that time.  The case was later set for trial in December 1999.  
 In October 1999, respondent filed a Memorandum in support of her summary judgment 
 motion.  Respondent submitted the affidavit of Dr. Lester M. Haddad, who is 
 an expert on cocaine-induced deaths, which stated that Browns life could not 
 have been saved had he been attended to immediately upon arrival at SRMC.
Petitioner filed a return in the summary judgment motion 
 wherein she argued that based on the affidavit of her expert witness, Dr. Alfred 
 Frankel, respondents motion should not be granted.  Dr. Frankel is an emergency 
 medicine physician licensed in Florida whose affidavit was obtained by petitioners 
 counsel in October 1996.
Dr. Frankel stated in his affidavit that he had reviewed 
 Browns medical and hospital records, the autopsy report and affidavits from
eyewitnesses on the scene during Browns arrest and medical 
 treatment.  He stated that based on a reasonable degree of medical certainty, 
 . . . medical personnel at [SRMC] deviated from the standard of care during 
 an emergency . . . by failing to timely seek medical attention for Brown, failing 
 to triage Brown and take his vital signs in an appropriate or timely manner, 
 failing to take an appropriate history, failing to perform an appropriate physical 
 examination, and failing to provide appropriate cardiac or ventilatory support 
 to prevent Brown from going into cardiopulmonary arrest.  Dr. Frankel further 
 stated that, based upon a reasonable degree of medical certainty, the time that 
 elapsed between the time Brown was transported to the hospital and the time 
 he was seen by medical authorities was unreasonable.  Finally, he stated he 
 was convinced to a reasonable degree of medical certainty that . . . Brown 
 died as a direct result of the negligence on the part of the nurses and doctors 
 at [SRMC] . . . and that his death was the result of acute respiratory arrest 
 secondary to cocaine ingestion which clearly could have been prevented with 
 earlier appropriate medical care. 

Petitioner also provided an affidavit from attorney Thomas 
 E. Moseley.  Moseley opined that [respondent] committed professional malpractice 
 and deviated from the applicable standard of care in her handling of the underlying 
 case.
The trial court granted respondents summary judgment 
 motion, because petitioner had failed to present any evidence establishing a 
 question of fact as to the element of proximate cause in her medical malpractice 
 action.  The court found the only evidence petitioner presented on the issue 
 of proximate cause was Dr. Frankels conclusory and speculative affidavit.  
 The court further found that while Dr. Frankels opinions may find acceptance 
 under the loss of chance doctrine, they were not beneficial in a state such 
 as South Carolina which does not recognize that doctrine but instead requires 
 a plaintiff who relies on expert testimony to introduce evidence that the defendants 
 negligence most probably resulted in the injuries alleged.  The court found 
 it was impossible to determine from Dr. Frankels affidavit whether Mr. Browns 
 life most probably would have been saved had he received treatment any earlier.  
 The Court of Appeals affirmed.
ISSUE

Did the Court of Appeals err by affirming the trial courts grant of summary 
 judgment to respondent?

DISCUSSION
Petitioner argues summary judgment should not have been granted to respondent 
 because Dr. Frankels affidavit creates a question of fact as to whether she 
 would have been successful in her underlying medical malpractice claim.
Summary judgment is appropriate only if there is no genuine issue 
 of material fact and the moving party is entitled to judgment as a matter of 
 law.  Cunningham ex rel. Grice v. Helping Hands, Inc., 352 S.C. 485, 
 575 S.E.2d 549 (2003).  In determining whether any triable issues of fact exist 
 for summary judgment purposes, the evidence and all the inferences that can 
 be reasonably drawn from the evidence must be viewed in the light most favorable 
 to the nonmoving party.  Id.  The Court must construe all ambiguities, 
 conclusions, and inferences arising from the evidence against the moving party; 
 however, the opposing party may not rest upon mere allegations or denials, but 
 must respond with specific facts showing a genuine issue.  City of Columbia 
 v. Town of Irmo, 316 S.C. 193, 447 S.E.2d 855 (1994).  
To prove legal malpractice, the plaintiff must establish:  (1) the 
 breach of a duty by the attorney, (2) proximate causation, and (3) damages.  
 Brown v. Theos, 345 S.C. 626, 550 S.E.2d 304 (2001).  Additionally, the 
 plaintiff must generally establish the standard of care by expert testimony.  
 Smith v. Haynsworth, Marion, McKay & Geurard, 322 S.C. 433, 472 S.E.2d 
 612 (1996).  Moreover, the plaintiff must show he or she most probably would 
 have been successful in the underlying suit if the attorney had not committed 
 the alleged malpractice.  Brown v. Theos, supra.  
The underlying suit involved in this case is 
 a medical malpractice action.  In a medical malpractice action, the plaintiff 
 must present (1) evidence of the generally recognized practice and procedures 
 that would be exercised by competent practitioners in a defendant doctors field 
 of medicine under the same or similar circumstances and (2) evidence that the 
 defendant doctor departed from the recognized and generally accepted standards, 
 practices, and procedures in the manner alleged by the plaintiff.  Gooding 
 v. St. Francis Xavier Hosp., 326 S.C. 248, 487 S.E.2d 596 (1997).  Further, 
 unless the subject is a matter of common knowledge, the plaintiff must use expert 
 testimony to establish both the standard of care and the defendants failure 
 to conform to that standard.  Id.  A medical malpractice plaintiff who 
 relies solely on expert testimony must introduce evidence that the defendants 
 negligence most probably resulted in the injuries alleged.  Id.
Dr. Frankels affidavit creates a genuine issue 
 of material fact as to whether SRMCs delay in treating Ronnie Brown was the 
 proximate cause of his death.  Dr. Frankel, in his affidavit, states he based 
 his opinion on his review of Ronnie Browns medical and hospital records, his 
 autopsy report, and affidavits from eyewitnesses to his arrest and medical treatment.   
 He further states he is familiar with the standards of medical practice and 
 the standard of care relevant to emergency medical practice.  Dr. Frankel sets 
 forth five specific deviations from the standard of care.  He then concludes 
 he is convinced to a reasonable degree of medical certainty that Ronnie Brown 
 died as a direct result of the negligence of SRMC medical personnel and that 
 his death clearly could have been prevented with earlier appropriate medical 
 care.  Given Dr. Frankel clearly states the basis of his opinion and clearly 
 delineates how SRMC deviated from the standard of care, the affidavit is not 
 conclusory or speculative as found by the trial court.
As stated previously, the trial court found 
 that, while Dr. Frankels opinions may find acceptance under the loss of chance 
 doctrine, those opinions were not helpful in South Carolina because this state 
 does not recognize that doctrine.
The loss of chance doctrine permits recovery 
 when the delay in proper diagnosis or treatment of a medical condition results 
 in the patient being deprived of a less than even chance of surviving or recovering.  
 Taylor v. Medenica, 324 S.C. 200, 479 S.E.2d 35 (1996).  This Court has 
 rejected the loss of chance doctrine because it does not comport with the 
 South Carolina standard that, in a medical malpractice action, the plaintiff 
 who relies on expert testimony must introduce evidence that the defendants 
 negligence most probably resulted in the injuries alleged.  Id. (citing 
 Jones v. Owings, 318 S.C. 72, 456 S.E.2d 371 (1995)).  In rejecting the 
 doctrine, the Court found the loss of chance doctrine was fundamentally at 
 odds with the requisite degree of medical certainty necessary to establish a 
 causal link between the patients injury and the physicians tortious conduct, 
 and that, instead, legal responsibility under the doctrine was assigned based 
 on the mere possibility that a physicians negligence was a cause of the ultimate 
 harm.  Jones, supra.
The trial court erred by finding Dr. Frankels 
 opinions come within the scope of the loss of chance doctrine.  Dr. Frankel 
 did not state in his affidavit that the delay in diagnosing and treating Ronnie 
 Brown resulted in his having a lesser chance of survival than he would have 
 had had he been diagnosed earlier.  Instead, Dr. Frankel states he is convinced 
 to a reasonable degree of medical certainty that Ronnie Brown died as a direct 
 result of SRMCs negligence.  He further stated Ronnie Browns death could have 
 been prevented with earlier appropriate medical care.  Both of these statements 
 meet the requirement that a medical malpractice plaintiff, relying solely on 
 expert testimony, must introduce evidence that the defendants negligence most 
 probably resulted in the injuries alleged.  See Baughman v. American 
 Tel. and Tel. Co., 306 S.C. 101, 410 S.E.2d 537 (1991) (not necessary that 
 expert actually use words most probably; sufficient if testimony impresses 
 that opinion represents experts professional judgment as to most likely one 
 among possible causes).
Because Dr. Frankels affidavit creates a genuine 
 issue of material fact as to whether SRMCs negligence was the proximate cause 
 of Ronnie Browns death, there is likewise a genuine issue of material fact 
 as to whether Brown can show she most probably would have been successful in 
 her underlying medical malpractice suit if respondent had not committed malpractice.  
 Accordingly, the Court of Appeals erred by affirming the trial courts decision 
 granting respondent summary judgment.
REVERSED.
TOAL, C.J., WALLER and PLEICONES, JJ., concur.  BURNETT, J., not 
 participating.

 
 [1] Brown 
 v. Calhoun, Op. No. 2002-UP-795 (S.C. Ct. App. filed December 19, 2002). 
 

 
 [2] Respondent 
 was apparently unaware that there is a two-year statute of limitations period 
 for actions brought under the Tort Claims Act.  See S.C. Code Ann. 
 § 15-78-110 (Supp. 2003).