532 S.E.2d 856

**Charles W. CROSBY, Jr., Personal Representative of the Estate of Charles W. Crosby, III, Appellant,**

v.

**GLASSCOCK TRUCKING CO., INC., and Kristie J. Crosby, Respondents.**

No. 25132.

Supreme Court of South Carolina.

Reheard July 23, 1997.
Decided May 22, 2000.
Rehearing Denied June 22, 2000.

Gregory A. Morton, of Donnan, Morton & Davis, P.A., of Greenville, for appellant.

Edwin B. Parkinson, Jr., and Alexander M. Bullock, both of Haynsworth, Marion, McKay & Guerard, of Greenville, for respondent Glasscock Trucking Co., Inc.

Michael J. Giese and Jack H. Tedards, Jr., both of Leatherwood, Walker, Todd & Mann, P.C., of Greenville, for respondent Kristie J. Crosby.

MOORE, Justice:

Appellant commenced this action for wrongful death in his capacity as personal representative of the estate of his stillborn child. The trial judge granted respondents' motion for summary judgment on the ground a nonviable stillborn fetus cannot maintain such an action. We affirm.

## FACTS

Respondent Kristie Crosby was twenty weeks pregnant when she was injured in a automobile accident. The car she was driving collided with a truck owned and operated by respondent Glasscock Trucking Co., Inc. It is undisputed the fetus Kristie was carrying was nonviable at the time of the accident. The fetus was delivered stillborn later the same day.

## DISCUSSION

■ Appellant commenced this action pursuant to S.C.Code Ann. § 15–51–10 (1976) which allows for a civil action to recover damages for the wrongful death of a "person."[1] When enacted, our wrongful death statute created a new cause of action in derogation of the common law rule that a tort action dies with the death of the injured person. *In re: Mayo's Estate,* 60 S.C. 401, 38 S.E. 634, 638 (1901). A statute creating a cause of action in derogation of common law is a statute of creation. *Simpson v. Sanders,* 314 S.C. 413, 445 S.E.2d 93 (1994); *Hyder v. Jones,* 271 S.C. 85, 245 S.E.2d 123 (1978). Such a statute must be strictly construed and its application must not be extended beyond the clear intent of the legislature. *Davenport v. Summer,* 273 S.C. 771, 259 S.E.2d 815 (1979).

Construing this statute, in *West v. McCoy,* 233 S.C. 369, 105 S.E.2d 88 (1958), we held a nonviable stillborn fetus cannot maintain a wrongful death action. *West* is still valid[2] and controls this case. To justify overruling *West,* the dissent posits hypothetically that a nonviable fetus could maintain a cause of action if born alive and therefore a stillborn nonviable fetus should have the same right. The fact that a fetus is born alive, however, is indisputable evidence that it is *viable* because it has in fact lived independently of its mother. *See Hudak v. Georgy,* 535 Pa. 152, 634 A.2d 600 (1993) (infant born alive is a person and concept of viability is irrelevant when infant survives birth). Allowing an action by a nonviable but born-alive fetus is therefore fundamentally different from a case such as this where the fetus is not born alive.

---

1. This section provides in pertinent part:

   Whenever the death of a person shall be caused by the wrongful act, neglect or default of another and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured....

2. Our two subsequent cases allowing such an action, *Hall v. Murphy,* 236 S.C. 257, 113 S.E.2d 790 (1960), and *Fowler v. Woodward,* 244 S.C. 608, 138 S.E.2d 42 (1964), involved *viable* fetuses and did not modify the holding of *West* as appellant claims.

A mother who is negligently injured by the same act that results in the stillbirth of her fetus may, of course, seek recovery for her own personal injuries. The dissent would have us go further by allowing an independent civil action on the fetus's behalf. Such an action could in fact be brought *against* the mother where the mother herself is alleged to be negligent in the death of her nonviable stillborn fetus, as in this case, or where the mother has exercised her right to a legal abortion. *See* S.C.Code Ann. § 44–41–20 (1985). Further, such a civil suit could encompass liability for personal conduct of the mother that allegedly affects the fetus. While we understand the devastating loss of an unborn child, we are not convinced of the soundness of such a policy.

Consistent with our decision in *West*, the majority of courts have held a nonviable stillborn fetus cannot maintain an independent wrongful death action. *See, e.g., Gentry v. Gilmore*, 613 So.2d 1241 (Ala.1993); *Humes v. Clinton*, 246 Kan. 590, 792 P.2d 1032 (1990); *Kandel v. White*, 339 Md. 432, 663 A.2d 1264 (1995); *Thibert v. Milka*, 419 Mass. 693, 646 N.E.2d 1025 (1995); *Wallace v. Wallace*, 120 N.H. 675, 421 A.2d 134 (1980); *Coveleski v. Bubnis*, 535 Pa. 166, 634 A.2d 608 (1993); *Miccolis v. AMICA Mut. Ins. Co.*, 587 A.2d 67 (R.I.1991). Courts addressing this issue have invariably deferred to the legislature in rejecting a wrongful death action by a nonviable stillborn fetus. The dissent would have us join a minority of jurisdictions to judicially allow such an action, a minority that includes only West·Virginia. Because a wrongful death action is a legislatively created one, we find deference to the legislature especially appropriate in this matter.[3]

## CONCLUSION

We hold a nonviable stillborn fetus may not maintain a wrongful death action under § 15–51–10. Accordingly, the order granting respondents' motion for summary judgment is

**AFFIRMED..**

---

3. Our legislature is currently considering this issue. Bill H. 3863 would amend Title 15 of the South Carolina Code Annotated by adding: "Section 15–5–5: For purposes of a civil cause of action, 'person' includes an unborn child at every stage of gestation in utero from conception until live birth."

FINNEY, C.J., and WALLER, J., concur.

TOAL and BURNETT, JJ., dissenting in a separate opinion.

TOAL, Justice: I respectfully dissent.

The sole issue before this Court is whether a cause of action exists under the South Carolina wrongful death statute, S.C.Code Ann. § 15–51–10 (1976), for the negligently induced stillbirth of a nonviable fetus. The statute imposes three requirements for recovery: (1) the death of a person; (2) a wrongful or negligent act by the defendant; and (3) causation.[1] This appeal focuses on whether Appellant can satisfy the statute's first requirement, death of a "person."

## A. PRENATAL INJURY UNDER SOUTH CAROLINA CASE LAW

We have addressed the issue of civil recovery for prenatal injury and death on three occasions: *West v. McCoy*, 233 S.C. 369, 105 S.E.2d 88 (1958); *Hall v. Murphy*, 236 S.C. 257, 113 S.E.2d 790 (1960); and *Fowler v. Woodward*, 244 S.C. 608, 138 S.E.2d 42 (1964).

In *West v. McCoy, supra,* the defendant crashed his automobile into the rear of the plaintiff's car. The plaintiff was at the time about five months pregnant. As a result of the accident the plaintiff experienced cramps and vaginal bleeding. The plaintiff's doctor advised her to remain in bed. For about a month following the accident, the plaintiff continued to feel the fetal movements of her child. However, not long thereafter, the plaintiff suffered a miscarriage in which the fetus was born dead. The plaintiff brought a wrongful death action against the defendant. This Court recognized the prevailing

---

1. Section 15–51–10 currently reads in its entirety as follows:

Whenever the death of a person shall be caused by the wrongful act, neglect or default of another and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, although the death shall have been caused under such circumstances as make the killing in law a felony. In the event of the death of the wrongdoer, such cause of action shall survive against his personal representative.

common law view that a cause of action could be maintained where prenatal injuries resulted in disability or death after live birth, and where the infant was viable and capable of being delivered and remaining alive separate from its mother at the time of injury. In *West*, the Court noted that the fetus neither was viable at the time of the injury nor was it born alive. Thus, the plaintiff was precluded from suing for the wrongful death of her fetus. The Court expressly declined to decide whether it would follow the common law view that an action could be maintained by a child injured while *en ventre sa mere* [2] and born alive.

In *Hall v. Murphy, supra,* this Court answered the question left open in *West*. We held for the first time that a cause of action for wrongful death could be maintained for prenatal injuries occurring to a viable [3] fetus in cases where the child was born alive and then died as a result of those injuries. We rejected the reasons previously advanced against recovery for prenatal injuries, *e.g.,* the difficulty in determining a causal relationship between a prenatal injury and the death or the condition of the child, the possibility of fictitious claims, the belief that a child was not a person until born, and lack of precedent. We recognized that the inherent difficulty in proving a causal relationship between a prenatal injury and the damage which subsequently becomes apparent presents no insurmountable problem, at least in cases where the child is born alive. Further, questions about causation and reasonable certainty which will arise in these cases are no different from questions about causation arising in other negligence actions. This Court noted that a few courts had gone even further to hold that a cause of action could be maintained for injuries to

---

**2.** *En Ventre sa mere* means "in its mother's womb." BLACK'S LAW DICTIONARY 534 (6th ed.1990).

**3.** A "viable" fetus is one "that has reached such a stage of development that it can live outside of the uterus." *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1823 (28th ed.1994). In *West,* we recognized that viability usually occurs between the sixth and seventh month of development and courts continue to follow this time frame for the definition of viability. *See West,* 233 S.C. at 375, 105 S.E.2d at 91; Sheldon R. Shapiro, Annotation, *Right to Maintain Action or to Recover Damages for Death of Unborn Child,* 84 A.L.R.3d 411, 432 n. 72 (1978 & Supp.1999).

a nonviable fetus later born alive. However, the Court in *Hall* declined to decide this issue since it was not before it.

In our last decision, *Fowler v. Woodward, supra,* we abandoned the requirement of live birth and held that recovery could be had for the wrongful death of a stillborn, viable fetus. In *Fowler,* we commented on our wrongful death statute and its requirements as follows: "An action for wrongful death will lie, under the terms of the statute, when the death of a *person* is caused by the act, neglect or default of another and the *act is such* as would, *if death had not ensued,* have entitled the party injured to maintain an action." *Fowler,* 244 S.C. at 612–13, 138 S.E.2d at 44. We concluded, "we see no more reason why [the cause of action] should be cut off because of the child's death before birth, than if it died thereafter." *Id.* at 614, 138 S.E.2d at 45 (quoting *State v. Sherman,* 234 Md. 179, 198 A.2d 71, 73 (1964)).

In 1964, when we first recognized a cause of action in *Fowler* for the wrongful death of a stillborn, viable fetus, South Carolina was among a minority of jurisdictions to do so. At the time, the prevailing view among other jurisdictions was that an unborn fetus, whether viable or not, was not a "person" as contemplated under the terms of the wrongful death statutes enacted by state legislatures. Rather, it was only upon birth that a "person" was said to begin existence as a complete, separate individual. In earlier decisions, like *West,* courts understood that a viable fetus could exist apart from the mother if delivered at any point during the viability stage. *See West,* 233 S.C. at 375, 105 S.E.2d at 91 ("A fetus generally becomes a viable child between the sixth and seventh month of its existence."). Nevertheless, the majority of jurisdictions refused to recognize that a viable fetus was a "person" for purposes of the wrongful death statute. This Court in *Fowler* recognized the inconsistency of this rule which allowed recovery for prenatal injuries when the child was born alive, but not when the child was stillborn. In essence, a defendant was better off if the wrongful or negligent conduct was severe enough to cause the death of the fetus while still in the mother's womb. The Court rejected this illogical approach, stating:

> The cause of action arose at the time of the injury and we see no more reason why it should be cut off because of the

child's death before birth, than if it died thereafter. The wrongful act would have entitled the "party injured to maintain an action ... if death had not ensued," and under the plain words of the death statute we think the action survives, or permits the parents to recover, notwithstanding the death of the child.

*Fowler,* 244 S.C. at 614, 138 S.E.2d at 45 (quoting *State v. Sherman,* 234 Md. 179, 198 A.2d 71, 72 (1964)).[4]

## B. Prenatal Injury Statutes and Case Law From Other Jurisdictions

The first American decision to address prenatal injury and wrongful death was *Dietrich v. Inhabitants of Northampton,* 138 Mass. 14, 52 Am.Rep. 242 (1884). In *Dietrich,* the mother fell when she was four or five months pregnant and thereafter gave birth prematurely to a child who lived only fifteen minutes. Justice Holmes held that because an unborn child was a part of the mother, no action could be maintained for wrongful death of the child, but that any damage to the child, if not too remote to be recoverable at all, was recoverable by the mother. Until the 1940's, nearly all jurisdictions considering the issue reached the same conclusion. *See* W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 55, at 367 (5th ed.1984).

---

4. A minority of jurisdictions continue to require that an individual be born alive to fall within the coverage of their wrongful death statutes. *E.g., Chatelain v. Kelley,* 322 Ark. 517, 910 S.W.2d 215 (1995) (holding an unborn fetus is not a "person" within the terms of the Arkansas wrongful death statute in a case of first impression in which the court declined to extend coverage to a viable, stillborn fetus). For other states maintaining this view, see generally Shapiro, *supra* note 4 (citing *Justus v. Atchison,* 19 Cal.3d 564, 139 Cal.Rptr. 97, 565 P.2d 122 (1977), *disagreed with on other grounds, Ochoa v. Superior Court,* 39 Cal.3d 159, 216 Cal.Rptr. 661, 703 P.2d 1 (1985); *Hernandez v. Garwood,* 390 So.2d 357 (Fla.1980); *Peters v. Hospital Auth. of Elbert County,* 265 Ga. 487, 458 S.E.2d 628 (1995); *Dunn v. Rose Way, Inc.,* 333 N.W.2d 830 (Iowa 1983); *Milton v. Cary Medical Ctr.,* 538 A.2d 252 (Me.1988); *Smith v. Columbus Community Hosp.,* 222 Neb. 776, 387 N.W.2d 490 (1986); *Giardina v. Bennett,* 111 N.J. 412, 545 A.2d 139 (1988); *Endresz v. Friedberg,* 24 N.Y.2d 478, 301 N.Y.S.2d 65, 248 N.E.2d 901 (1969); *Blackman v. Langford,* 795 S.W.2d 742 (Tex.1990); *Lawrence v. Craven Tire Co.,* 210 Va. 138, 169 S.E.2d 440 (1969)). *See also* 25A C.J.S. *Death* § 26(2) (1966 & Supp.1999) providing a summary of the divergence of views in this area.

Beginning in the 1940s with *Bonbrest v. Kotz,* 65 F.Supp. 138 (D.D.C.1946), courts around the country abandoned the holding of *Dietrich.* Today, every jurisdiction permits recovery for prenatal injuries if a child is born alive. *See Farley v. Sartin,* 195 W.Va. 671, 466 S.E.2d 522, 528 (1995). This generally holds true regardless whether the injury occurred either before or after the point of viability. *Id.* The majority of jurisdictions also recognize a cause of action for the wrongful death of a stillborn, viable fetus.[5] Many of the jurisdictions recently reviewing the issue have specifically held that a cause of action for wrongful death does not lie for a nonviable, stillborn fetus. *See, e.g., Ferguson v. District of Columbia,* 629 A.2d 15, 17 (D.C.1993); *Humes v. Clinton,* 246 Kan. 590, 792 P.2d 1032, 1037 (1990); *Kandel v. White,* 339 Md. 432, 663 A.2d 1264 (1995).[6]

---

**5.** *Wade v. United States,* 745 F.Supp. 1573 (D.Haw.1990) (applying Hawaii law); *Simmons v. Howard Univ.,* 323 F.Supp. 529 (D.D.C.1971) (applying District of Columbia law); *Eich v. Town of Gulf Shores,* 293 Ala. 95, 300 So.2d 354 (1974); *Summerfield v. Superior Court,* 144 Ariz. 467, 698 P.2d 712 (1985); *Hatala v. Markiewicz,* 26 Conn.Supp. 358, 224 A.2d 406 (1966); *Worgan v. Greggo & Ferrara, Inc.,* 128 A.2d 557 (Del.Super.Ct.1956); *Volk v. Baldazo,* 103 Idaho 570, 651 P.2d 11 (1982); *Britt v. Sears,* 150 Ind.App. 487, 277 N.E.2d 20 (1971); *Hale v. Manion,* 189 Kan. 143, 368 P.2d 1 (1962); *Mitchell v. Couch,* 285 S.W.2d 901 (Ky.1955); *State v. Sherman,* 234 Md. 179, 198 A.2d 71 (1964); *Mone v. Greyhound Lines, Inc.,* 368 Mass. 354, 331 N.E.2d 916 (1975); *O'Neill v. Morse,* 385 Mich. 130, 188 N.W.2d 785 (1971); *Verkennes v. Corniea,* 229 Minn. 365, 38 N.W.2d 838 (1949); *Rainey v. Horn,* 221 Miss. 269, 72 So.2d 434 (1954); *White v. Yup,* 85 Nev. 527, 458 P.2d 617 (1969); *Poliquin v. MacDonald,* 101 N.H. 104, 135 A.2d 249 (1957); *Salazar v. St. Vincent Hosp.,* 95 N.M. 150, 619 P.2d 826 (Ct.App.1980); *DiDonato v. Wortman,* 320 N.C. 423, 358 S.E.2d 489 (1987); *Hopkins v. McBane,* 427 N.W.2d 85 (N.D.1988); *Werling v. Sandy,* 17 Ohio St.3d 45, 476 N.E.2d 1053 (1985); *Stidam v. Ashmore,* 109 Ohio App. 431, 167 N.E.2d 106 (1959); *Evans v. Olson,* 550 P.2d 924 (Okla.1976); *Libbee v. Permanente Clinic,* 268 Or. 258, 518 P.2d 636 (1974); *Amadio v. Levin,* 509 Pa. 199, 501 A.2d 1085 (1985); *Miccolis v. AMICA Mut. Ins. Co.,* 587 A.2d 67 (R.I.1991), *overruling in part, Presley v. Newport Hosp.,* 117 R.I. 177, 365 A.2d 748 (1976); *Vaillancourt v. Medical Ctr. Hosp.,* 139 Vt. 138, 425 A.2d 92 (1980); *Moen v. Hanson,* 85 Wash.2d 597, 537 P.2d 266 (1975); *Kwaterski v. State Farm Mut. Auto. Ins. Co.,* 34 Wis.2d 14, 148 N.W.2d 107 (1967).

**6.** For other decisions reaching a similar conclusion, *see Santana v. Zilog, Inc.,* 878 F.Supp. 1373 (D.Idaho 1995) (under Idaho law, as interpreted by the district court, the right to assert a cause of action for wrongful death is limited to cases involving the death of a viable fetus);

The only state *judicially* providing recovery for a stillborn fetus in the absence of viability is West Virginia. In West Virginia, the Supreme Court of Appeals recently held that "the term 'person,' as used in [the West Virginia wrongful

---

*Rottman v. Krabloonik, Inc.*, 834 F.Supp. 1269, 1271, 1272 & n. 8 (D.Colo.1993) (Colorado wrongful death statute does not apply to fetus prior to viability; the district court noted this issue has not been addressed by the Colorado legislature or the state courts, but that, based on "a majority of published authority" on this issue, it was not "illogical, arbitrary and capricious" to use viability as a cutoff point); *In re Air Crash Disaster*, 737 F.Supp. 427 (E.D.Mich.1989), *aff'd* 917 F.2d 24 (1990) (no separate recovery for unborn, nonviable fetus); *Estate of Baby Foy v. Morningstar Beach Resort*, 635 F.Supp. 741, 743 (D.Vi.1986) (no independent cause of action for nonviable fetus under Virgin Islands wrongful death statute; the court followed the "common law as applied in the majority of jurisdictions in the United States"); *Mace v. Jung*, 210 F.Supp. 706 (D.Alaska 1962) (the district court held an action does not lie for an unborn, nonviable fetus under Alaska's wrongful death statute; the state appellate court has not ruled on whether it would recognize a wrongful death action for the death of a *viable* fetus); *Gentry v. Gilmore*, 613 So.2d 1241 (Ala.1993) (unborn, nonviable fetus is not a "minor child" for purposes of Alabama wrongful death statute); *Thibert v. Milka*, 419 Mass. 693, 646 N.E.2d 1025 (1995) (fetus must be viable or born alive; where nonviable fetus is stillborn, it could not have independent existence, and there is therefore no separate cause of action for its death in the absence of legislative directive); *Carr v. Wittingen*, 182 Mich.App. 275, 451 N.W.2d 584 (1990) (fetus is "person" for purposes of wrongful death statute if it is born alive or is viable at time of alleged injury); *Wallace v. Wallace*, 120 N.H. 675, 421 A.2d 134 (1980) (no independent cause of action for nonviable fetus which is not born alive); *Miller v. Kirk*, 120 N.M. 654, 905 P.2d 194, 197 (1995) (no coverage for nonviable fetus, even if born alive; the court stated, "where our wrongful death statute does not explicitly address the rights of the unborn child, we consider it sound statutory interpretation to limit the right to maintain an action to a viable fetus"); *Guyer v. Hugo Pub. Co.*, 830 P.2d 1393 (Okla.App.1991) (no cause of action for stillborn, nonviable fetus); *Coveleski v. Bubnis*, 535 Pa. 166, 634 A.2d 608, 610 (1993) (fetus must be viable or born alive; the court concluded it should "defer to our legislature for any substantial expansion of the scope of liability"); *Miccolis v. AMICA Mut. Ins. Co.*, 587 A.2d 67, 71 (R.I.1991) (court stated "the overwhelming majority view in this country is that a nonviable fetus has no right to bring an action for wrongful death"). A distinct minority of jurisdictions have determined viability is not a consideration in cases where a nonviable fetus is born *alive*. *See, e.g.*, cases noted above and *Hudak v. Georgy*, 535 Pa. 152, 634 A.2d 600, 602 (1993) ("Viability describes the capacity of the unborn to survive outside the womb, and is not relevant when an infant survives birth."). This question is not before the Court in the case *sub judice* as the parties have stipulated that the fetus was nonviable and stillborn.

death statute] . . . encompasses a nonviable unborn child and, thus, permits a cause of action for the tortious death of such child." *Farley v. Sartin*, 195 W.Va. 671, 466 S.E.2d 522, 534 (1995). Previously, in *Baldwin v. Butcher*, 155 W.Va. 431, 184 S.E.2d 428 (1971), that court had recognized a cause of action for a viable, stillborn fetus.

A few jurisdictions have enacted additional statutes or amended their wrongful death statutes to include coverage for a fetus.[7] For example, South Dakota has amended its wrongful death statute to provide that "the death or injury of a person, *including an unborn child*," gives rise to a cause of action for wrongful death.[8] Illinois has enacted a fetal death statute which specifically allows wrongful death actions to be maintained regardless of a fetus' gestational development at the time of injury.[9] The Missouri legislature has enacted a statute providing life begins at conception and further, that the laws of the state should be interpreted to confer to unborn children at all stages of development all of the rights available

7. For a comparison of the wrongful death statutes of all states, see 3 STUART M. SPEISER ET AL., RECOVERY FOR WRONGFUL DEATH AND INJURY Appendix A (1992 & Supp.1999).

8. S.D. CODIFIED LAWS ANN. § 21-5-1 (1987) (emphasis added). The South Dakota Supreme Court has interpreted the phrase, "including an unborn child," as broadening coverage under the statute to include a nonviable fetus. *Wiersma v. Maple Leaf Farms*, 543 N.W.2d 787 (S.D. 1996). That court noted its interpretation was consistent with the South Dakota legislature's recent definition of "unborn child" in state criminal statutes as the period of a child's existence from fertilization until *live* birth. *Id.* at 789-90. The court stated that, prior to the legislature's statutory amendment, it had declined to extend coverage to a nonviable fetus. The court also noted that the majority of jurisdictions which have not extended coverage to a nonviable fetus, including South Carolina, have never been asked to interpret a term similar to "unborn child" because their wrongful death statutes have not been amended to specifically include a fetus. *Id.* at 790.

9. The Illinois statute, enacted in 1980, provides in pertinent part as follows:

The state of gestation or development of a human being when an injury is caused, when an injury takes effect, or at death, shall not foreclose maintenance of any cause of action under the law of this State arising from the death of a human being caused by wrongful act, neglect or default.
740 ILCS 180/2.2 (Smith–Hurd 1993).

to other citizens of the state.[10]   Although Montana has not amended its wrongful death act to include a fetus, it has enacted a separate statute defining "unborn child" which states, "A child conceived but not yet born is to be deemed an existing person, so far as may be necessary for its interests in the event of its subsequent birth." [11]   Louisiana has a similar provision which states, "An unborn child shall be considered as a natural person for whatever relates to its interest from the moment of conception.   If the child is born dead, it shall be considered never to have existed as a person, *except for purposes of actions resulting from its wrongful death.*" [12]

## C.   SOUTH CAROLINA WRONGFUL DEATH STATUTE CONSTRUED

The precise question presented to this Court is whether a nonviable fetus may be considered a person for purposes of the wrongful death statute.   In addressing this issue, I would begin with the question left open by this Court in *Hall, supra:* whether a cause of action lies for injuries to a nonviable fetus that is later born alive and survives.

Under our wrongful death statute, an action may be brought "Whenever the death of a person shall be caused by the wrongful act, neglect or default of another and the act, neglect or default is such as would, *if death had not ensued,* have entitled the party injured to maintain an action and

---

**10.**   Mo. ANN. STAT. § 1.205 (West Supp.1996).   Relying on this legislative provision, the Supreme Court of Missouri recently held that a wrongful death action could be brought on behalf of a nonviable fetus.   *Connor v. Monkem Co.,* 898 S.W.2d 89 (Mo.1995).   In the absence of such a statute, Missouri's court had previously ruled that a fetus must be viable for an action to lie.   *Rambo v. Lawson,* 799 S.W.2d 62 (Mo.1990).

**11.**   MONT. CODE ANN. § 41–1–103 (1995).   In *Strzelczyk v. Jett,* 264 Mont. 153, 870 P.2d 730 (1994), the Supreme Court of Montana, relying on this separate legislative provision, held that a stillborn, full-term fetus would be considered a "person" under its wrongful death statute.   It remains unclear, however, whether any fetus, regardless of viability, will be deemed covered under Montana's wrongful death act because the court stated it was reaching this result based on the particular facts of the case.   Prior to the statutory addition, Montana had not allowed recovery under its wrongful death act for a stillborn fetus.   *See Kuhnke v. Fisher,* 210 Mont. 114, 683 P.2d 916 (1984), *aff'd in part, rev'd in part,* 227 Mont. 62, 740 P.2d 625 (1987).

**12.**   LA. CIV. CODE ANN. art.   26 (West 1993) (emphasis added).

recover damages in respect thereof. . . ." S.C.Code Ann. § 15–51–10 (1976). Thus, it must be decided whether, in the instant case, the nonviable fetus could have maintained a cause of action in tort if it had continued to develop and was born alive with the injuries sustained during the nonviability stage. As noted above, it is generally recognized that a child may recover for prenatal injuries incurred either before or during viability, so long as the child is born alive. Restatement (Second) of Torts § 869 and cmt. Subsection 1(d) at 267–77 (1977); 62A Am.Jur.2d *Prenatal Injuries: Wrongful Life, Birth, or Conception* § 18 (1990). I agree with this view because an injury sustained "prior to viability is no less meritorious than a claim for one sustained afterward." 62A Am Jur.2d, supra § 19 at 413. It would be illogical to provide a cause of action to a child born with a defect arising out of an injury sustained during viability, while denying the same cause of action to a child whose injury occurred only a few weeks earlier during the nonviability stage. *See Farley v. Sartin,* 195 W.Va. 671, 466 S.E.2d 522, 532 (1995). Thus, I believe that a cause of action would lie for an injury suffered by a nonviable fetus that is later born alive.

Having decided that a child injured during the nonviability stage of fetal development could maintain a cause of action if born alive, I would hold that a nonviable fetus must also be considered a person for purposes of the wrongful death statute since, had death not ensued, the fetus would have been able to maintain an action. *See Fowler,* 244 S.C. at 614, 138 S.E.2d at 45. ("The wrongful death act would have entitled the 'party injured to maintain an action ... if death had not ensued,' and under the plain words of the death statute we think the action survives, or permits the parents to recover, notwithstanding the death of the child.") (citation omitted). A wrongful death cause of action should cover death at any point during fetal development beginning with conception. I recognize that nonviable fetuses, like fetuses that have reached the viability stage, may not always arrive at a successful birth.[13]

---

13. I recognize that some jurisdictions that permit a cause of action for prenatal injuries without regard to viability nevertheless maintain the viability distinction for stillbirths. 62A Am.Jur.2d *Prenatal Injuries: Wrongful Life, Birth, or Conception* § 18 (1990). Some courts rationalize this disparity on the theory that an injury suffered any time before

However, in cases where it can be shown that a defendant's wrongful conduct terminated the fetus' normal progression, I find no logical basis for attaching legal importance to the concept of viability.[14]

Significantly, my conclusion only removes the arbitrary hurdle of viability for those seeking recovery. As noted above, although proving a causal relationship between prenatal injury and the loss of the fetus is no longer an insurmountable task, the law still requires a plaintiff to prove traditional "but for" causation. By rejecting the "loss of chance" doctrine, this Court has refused to lessen the burden a plaintiff must meet in a tort action. See *Jones v. Owings*, 318 S.C. 72, 456 S.E.2d 371 (1995) (declining to adopt the loss of chance doctrine). A plaintiff cannot recover for the "mere *possibility* that a tortfeasor's negligence was a cause of the ultimate harm." *Id.*, 318 S.C. at 77, 456 S.E.2d at 374. Plaintiffs would still have to show that the defendant's actions most probably caused the death of the fetus.

I recognize that we would join a minority of jurisdictions that define "person" in this way for purposes of the wrongful death statute. However, such a holding in this respect is consistent with our reasoning in *Fowler*. As discussed above, when *Fowler* was decided in 1964 we departed from the majority view which held that the stillbirth of a viable fetus did not give rise to a wrongful death action. The fact that we were in the minority did not prevent this Court from refusing to follow the illogic of requiring that a fetus be born alive before a cause of action could be brought for prenatal injuries. And, in fact, this view has now become one shared by the

---

birth imposes conditional liability on the tortfeasor, which becomes unconditional or complete upon birth. *Id.* at § 19. However, I believe such an approach is inequitable because death is the most significant detractor from the potentiality of life. Why should less severe injuries be actionable simply because the victim had the good fortune of being born alive? If a court is going to allow a cause of action for prenatal injuries suffered any time before birth, it should do so even if the injuries are severe enough to result in immediate death.

14. I further note that a person's development continues even after a successful live birth. "The respiratory system is not completed until approximately eight years of age, the reproductive system develops at puberty, and the human brain does not attain its full development until the age of sixteen." *Nealis v. Baird*, 996 P.2d 438, 453 (Okla.1999).

majority of jurisdictions. Thus, it is in keeping with this reasoning that I would decline to allow a defendant to escape liability when a nonviable fetus dies in the womb, but not when the fetus is injured and later born alive.

Such a holding is also consistent with our rules of statutory construction. At common law, there was no remedy in tort for a wrongful killing. Hubbard & Felix, *The South Carolina Law of Torts*, at 595 (2d ed.1997). In 1859, the legislature enacted the wrongful death statute to provide a remedy in tort for a wrongful killing. As with any remedial statute, we are bound to construe the law liberally to effectuate its purpose. *South Carolina Dep't of Mental Health v. Hanna,* 270 S.C. 210, 241 S.E.2d 563 (1978). I believe an interpretation of "person" that includes life from the point of conception is necessary to make the wrongful death statute consistent with its purpose. The wrongful death statute was originally enacted to avoid the harsh result of allowing a tortious wrongdoer to avoid liability where the victim died from the wrongful conduct. To preserve the statute's purpose, this logic must also be applied to prenatal injuries. If, under my approach, we allow a survivor of prenatal injuries to bring a cause of action regardless of when during fetal development the injuries were sustained, then we should also permit a wrongful death action if the injury resulted in immediate death.

The majority argues our wrongful death statute is in derogation of the common law and therefore should be strictly construed. Initially, it should be noted that despite being in derogation of the common law, our wrongful death statute is a remedial statute. *See Morris v. Spartanburg R. Gas & Elec. Co.,* 70 S.C. 279, 49 S.E. 854, 855 (1904) ("The [wrongful death] statute is remedial, and should be liberally construed, so as to accomplish its object."). Furthermore, we have long recognized that "every remedial law must, of necessity, be in derogation of the common law." *Flenniken v. Marshall,* 43 S.C. 80, 20 S.E. 788, 789 (1895). As a result, "The rule that remedial statutes are construed liberally is one of the most common exceptions to the rule that statutes in derogation of the common law are to be construed strictly." Norman J. Singer, *Sutherland Statutory Construction* § 61.03, at 191 (5th ed.1992). Accordingly, the majority's narrow approach would serve to defeat the purposes behind enacting the statute.

In addition, my position is in line with the concept that tort liability is fault-based. *See Fitzer v. Greater Greenville South Carolina Young Men's Christian Assoc.*, 277 S.C. 1, 3, 282 S.E.2d 230, 231 (1981) ("There is no tenet more fundamental in our law than liability follows the tortious wrongdoer."). In fact, this Court has in recent decisions followed a trend of abolishing well-established tort doctrines which inhibit the proper apportioning of liability based on fault. *See Davenport v. Cotton Hope Plantation Horizontal Property Regime*, 333 S.C. 71, 508 S.E.2d 565 (1998) (abolishing the doctrine of assumption of risk as an absolute defense); *Spahn v. Town of Port Royal*, 330 S.C. 168, 499 S.E.2d 205 (1998) (abolishing the common law doctrine of last clear chance). Similarly, in the instant case, it is antithetical to our fault-based tort system to allow a negligent party to escape liability based solely on the blurred line of fetal viability. *See Farley*, 466 S.E.2d at 533 ("[J]ustice is denied when a tortfeasor is permitted to walk away with impunity because of the happenstance that the unborn child had not yet reached viability at the time of death.").

I realize that, if adopted, my position would be examined for its implications beyond the context of the wrongful death statute. For instance, it may be argued that my approach to the interpretation of "person" under the wrongful death statute could erode a woman's reproductive rights in the abortion context. However, I caution against any such inferences. My interpretation of "person" in this case is unique to the wrongful death statute and is further informed by principles of tort law. The United States Supreme Court has addressed the abortion controversy by balancing a woman's reproductive rights under the federal Constitution against the state's interests in protecting unborn children. *See Planned Parenthood v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147. In balancing these interests, the Supreme Court has held that, prior to viability, the state may not prohibit a woman from making the choice to terminate her pregnancy. *See Planned Parenthood, supra.* However, the Court has expressly acknowledged that where there is no protected liberty interest at stake, the government can adopt any view of life it desires:

It is conventional constitutional doctrine that where reasonable people disagree the government can adopt one position or the other. That theorem, however, assumes a state of affairs in which the choice does not intrude upon a protected liberty.

*Planned Parenthood,* 505 U.S. at 851, 112 S.Ct. at 2806–07, 120 L.Ed.2d 674 (citations omitted).

Unlike the abortion cases, wrongful death actions do not automatically implicate any countervailing, constitutional liberties. No one can argue in this case that the state or federal constitution shields the defendants' allegedly wrongful conduct. Without any protected liberty interest to balance, we are free to define "person" under the South Carolina wrongful death statute in a way that conforms with the law's purpose. In keeping with this Court's prior decisions which have liberally construed the wrongful death statute, I believe a definition of "person" that includes life from the point of conception comports with the statute's goal of affording a remedy to parties who could have sued if they had survived.

Our decisions in *Hall* and *Fowler* have already modified the holding of *West.* Today, I would overrule *West* and hold that a cause of action lies for the wrongful death of a nonviable fetus. My refusal to recognize a distinction between viability and nonviability is based on the same logical reasoning this Court used in refusing to recognize a distinction between viable fetuses which are born alive then die and viable fetuses killed in the womb. *See Hall, supra; Fowler, supra.* The logical underpinnings of those opinions have been a part of South Carolina's jurisprudence for four decades now. My dissent today is not formed by any new approach toward the definition of "person." Instead, this decision is the result of applying the logic of the relevant precedential cases in this area to the current issue at hand.

In this case, the concerns and justifications supporting our previous decisions militate toward an interpretation of "person" that will make the wrongful death statute consistent in its application. I note that it is within the power of our legislature to make the law more specific if it so chooses. Based on

the foregoing, I would **REVERSE** the trial court's grant of summary judgment.

BURNETT, J., concurs.