Betty **LAND; and Michelle Stephanie Brown, as Personal Representative of the Estate of Gary F. Land, Plaintiffs,**

v.

**GREEN TREE SERVICING, LLC; Five Brothers Mortgage Company Services and Securing, Inc.; PDQ Maintenance Solutions Inc.; Steve Thompson; Maintain It Now LLC; James Dean; Scope Field Services; and Debbie Raker, Defendants.**

**C/A No. 8:14–1165–TMC**

United States District Court,
D. South Carolina, Anderson Division.

Signed October 13, 2015

John Phillips Linton, Jr., Jon Lawrence Austen, Thomas P. Gressette, Jr., Pratt-Thomas Walker, Charleston, SC, for Plaintiffs.

Benjamin Rush Smith, III, Graham Ross Billings, Carmen Harper Thomas, Nelson, Mullins, Riley and Scarborough, Thomas Charles Salane, Turner, Padget, Graham and Laney, Eric K. Englebardt, Turner, Padget, Graham and Laney, Greenville, SC, David W. Overstreet, Steven Raymond Kropski, Carlock, Copeland, Semler and Stair, Charleston, SC, for Defendants.

## ORDER

Timothy M. Cain, United States District Judge

This matter is before the court on two separate motions to dismiss. (ECF Nos. 50 and 59). Defendant Green Tree Service, LLC ("Green Tree") filed a motion for partial dismissal seeking to have the wrongful death and survival claims dismissed. (ECF No. 50). Plaintiffs Betty Land and Michelle Stephanie Brown, as

Personal Representative of the Estate of Gary F. Land, (collectively "Plaintiffs") filed a response opposing the motion (ECF No. 62) and Green Tree filed a reply (ECF No. 67). Defendants Maintain It Now, LLC, and James Dean ("Moving Defendants") filed a motion to dismiss seeking to have the claims pursuant to the Fair Debt Collection Practices Act ("FDCPA") dismissed against them. (ECF No. 59). Plaintiffs filed a response opposing the motion (ECF No. 71), and Moving Defendants filed a reply (ECF No.74).

## I. Background/Procedural History

Plaintiff Betty Land and her late husband, Gary Land, owned property at 308 Mountain View in Westminister, South Carolina, which in 2012 was subject to a mortgage held by the Bank of New York Mellon ("Bank"). (ECF No. 46 ¶ 20, 2nd Am. Compl. ¶ 20). In August 2012, the Bank began foreclosure proceedings against the Lands. *Id.* at ¶ 21. The Lands counterclaimed for wrongful foreclosure. *Id.* at 22. In October 2012, the Lands took out a second mortgage and, with the proceeds, brought their first mortgage with the Bank current. Id. at ¶¶ 27, 28.

Defendant Green Tree became the loan servicer for the Bank of New York on September 16, 2012. (2nd Am.Compl.¶ 23). Defendant Five Brothers acted as an agent for Green Tree in regard to loans in Oconee county. *Id.* at ¶ 24. In February 2013, the Lands and the Bank agreed to execute a settlement to dismiss the foreclosure as moot. *Id.* at ¶ 29. In March 2013, the Lands executed a settlement ("Release") and their counsel sent the settlement paperwork to Green Tree. *Id.* at ¶ 30.

Plaintiffs allege that Gary Land was in poor health during this time and the Lands' attorney asked Green Tree not to contact the Lands because this would cause Gary stress and would be detrimental to his health. (2nd Am.Compl.¶¶ 32, 34–36). Plaintiffs allege, however, that Green Tree continued to send the Lands threatening letters regarding the foreclosure, and Green Tree would regularly drive by the Lands' property, park, and take pictures. *Id.* at ¶¶ 37–39.

On April 4, 2013, Plaintiffs allege a representative of Green Tree was parked near the Lands' home taking pictures when Gary Land confronted him and was told that his home was being foreclosed upon by Green Tree. *Id.* at ¶¶ 39–40. The Lands' attorney contacted Green Tree and asked if Green Tree was going to honor the Release and informed Green Tree that Gary Land had a heart problem and his doctor had advised him to reduce his stress. *Id.* at ¶ 45. Green Tree confirmed that it planned to execute the Release shortly. *Id.* at ¶ 48.

On April 11, 2013, Green Tree sent letters to Gary Land and Betty Land alleging they were in default, and sent a billing statement dated April 11, 2013, to them indicating that they were still in default on their mortgage. (2nd Am.Compl.¶ 52–53).

On April 21, 2013, Plaintiffs allege another Green Tree representative stopped in front of the Lands' property to take pictures when Gary Land confronted him and again Land was informed that the property was being foreclosed and that the representative needed information about who was on the property so that eviction proceedings could be started. (2nd Am. Compl. at ¶¶ 55, 58–59). Gary Land was very upset by the conversation and within hours had a massive heart attack and died. *Id.* at ¶ 60.

Following Gary's death, Betty Land has continued making the mortgage payments, but alleges that Green Tree has failed to timely credit her account, provide her access to her online account, forced her to

acquire expensive insurance, and refused her request that all contact be made through her attorney. *Id.* at ¶¶ 62, 66. In their Second Amended Complaint, Plaintiffs allege claims for survival, wrongful death, violations of the FDCPA, and breach of contract. (2nd Am.Comp.¶¶ 69–92).

## II. Applicable Law

When considering a 12(b)(6) motion to dismiss, the court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. *Ostrzenski v. Seigel,* 177 F.3d 245, 251 (4th Cir.1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal,* 129 S.Ct. at

1949 (*quoting Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

In analyzing a motion under Rule 12(b)(6), the Court also considers Fed. R. Civ. P. 8(a)(2), which requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy the minimal requirements of Rule 8(a)(2), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556, n. 3 127 S.Ct. 1955 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955.[1]

## III. Discussion

### A. Defendant Green Tree's Motion to Dismiss (ECF No. 50)

■ In its motion to dismiss, Green Tree contends that the because the negligence based claims have been dismissed, Plaintiffs' claims under the wrongful death and survival statutes also fail. Further, Green Tree argues that the FDCPA does not establish the duty necessary for the wrongful death and survival claims to survive, and Plaintiffs cannot assert duplicative claims under the wrongful death and survival statutes for alleged FDCPA violations. Plaintiffs note that Green Tree does not contest that Plaintiffs have stated a claim under the FDCPA, but instead

---

1. Ordinarily, in resolving a motion under Rule 12(b)(6), if a court considers material outside of the pleadings, "the motion must be treated as one for summary judgment under Rule 56," in which case "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, the court may properly consider documents "attached to the complaint, as well those attached to the

motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem. Hosp.,* 572 F.3d 176, 180 (4th Cir.2009) (citations omitted). Accordingly, the court finds that the mortgage and Release, which are attached to the motion to dismiss, are integral to the Amended Complaint, and the court has considered these documents in ruling on this motion to dismiss.

seeks the dismissal of Plaintiffs' wrongful death and survival claims.[2] Plaintiffs contend that Green Tree has not cited any authority for its proposition and they argue that they can pursue wrongful death and survival claims for violations of the FDCPA. The court agrees with Green Tree that Plaintiffs' wrongful death and survival claims should be dismissed.

South Carolina's wrongful death statute provides:

Whenever the death of a person shall be caused by the wrongful act, neglect or default of another and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, although the death shall have been caused under such circumstances as make the killing in law a felony.

S.C. Code Ann. § 15–51–10. South Carolina's survival statute provides:

Causes of action for and in respect to any and all injuries and trespasses to and upon real estate and any and all injuries to the person or to personal

property shall survive both to and against the personal or real representative, as the case may be, of a deceased person and the legal representative of an insolvent person or a defunct or insolvent corporation, any law or rule to the contrary notwithstanding.

S.C. Code Ann. § 15–5–90.

Although there is not a South Carolina case unequivocally stating that claims under the South Carolina wrongful death and survival statutes must be based upon negligence,[3] there is dicta which supports this conclusion. *See e.g. Crosby v. Glasscock Trucking Co.*, 340 S.C. 626, 532 S.E.2d 856, 863 (2000) (holding that "[i]n 1859, the legislature enacted the wrongful death statute to provide a remedy in *tort* for a wrongful killing" and "[t]he wrongful death statute was originally enacted to avoid the harsh result of allowing a *tortious* wrongdoer to avoid liability where the victim died from the wrongful conduct.") (emphasis added).[4] The wrongful death statute created a new cause of action that was not recognized at common law. *Id.* at 856.[5] "When enacted, [South Carolina's] wrongful death statute created a new cause of action in derogation of the common law rule that a *tort* action dies with the death of the injured person." *Id.* (emphasis add-

---

**2.** Green Tree confirms this in its memorandum supporting its Reply. (ECF No. 67 at 2)(stating "Green Tree has not moved to dismiss Plaintiffs' FDCPA claim."). *See also* ECF No. 67 at 4.

**3.** The court notes that Plaintiffs have also not cited to any South Carolina cases which would support their view that a wrongful death claim need not be premised on negligence or tortious conduct.

**4.** Other states have added additional causes of action to their wrongful death statutes. For example, the Florida legislature added language to Florida's Wrongful Death Act that makes it clear that recovery may be obtained when the underlying action is one for breach

of contract or warranty. *See* Fla. St. 768.19 (stating that wrongful death is a death caused by a "wrongful act, negligence, default, or breach of contract or warranty." ) If South Carolina had wanted to expand its Wrongful Death or Survival Acts, it easily could have done so by amending the statutes.

**5.** An English statute, Lord Campbell's Act, 9 & 10 Vict., c. 93 (1846), has served as the model for South Carolina's Acts and similar acts in most other states. *Levy v. Louisiana*, 391 U.S. 73, n.2, 88 S.Ct. 1512, 20 L.Ed.2d 444 (1968)(internal citation and quotation marked omitted). *See also Quattlebaum v. Carey Canada, Inc.*, 685 F.Supp. 939 (D.S.C. 1988).

ed). The court finds that these statutes merely prevent the abatement of negligence actions.

■ Therefore, the plaintiff in a wrongful death action must establish that the wrongful act or negligence of the defendant caused the death of the decedent. The standard tort principles that apply to causation in negligence cases apply to any action for wrongful death regardless of the basis of the underlying cause of action. Thus, prior to the recovery of damages in a wrongful death action, there must be evidence of a breach of a duty owed by the defendants to the decedent, or an underlying tort. Here, as the court found in its prior Order (ECF No. 25), there was no duty owed by Defendants to decedent and Plaintiffs do not raise a underlying tort claim in their Complaint. Further, the court finds that the FDCPA cannot provide the duty needed for these claims to survive. Accordingly, Plaintiffs' wrongful death and survival claims are dismissed.

### B. Moving Defendants' Motion to Dismiss (ECF No. 59)

■ In their Motion to Dismiss, the Moving Defendants contend that the FDCPA claims against them are barred by the one year statute of limitations applicable to claims under 15 U.S.C. § 1692k(d) and Plaintiffs have failed to allege facts sufficient to state a plausible FDCPA claim for relief against them. The court agrees that the FDCPA claims against the Moving Defendants are barred by the statute of limitations.

The Moving Defendants were recently added as defendants to this action when Plaintiffs filed their 2nd Amended Complaint on April 7, 2015. In their Second Amended Complaint, Plaintiffs allege that the Moving Defendants violated the FDCPA by "stopping in front of the Lands' property and ... taking ... pic-

tures" on April 21, 2013, and visiting the Lands' property in or about "September 2013, October 2013, and December 2013." (ECF No. 46 ¶¶ 12, 55–56). Accordingly, the Moving Defendants argue that the statute of limitations expired, at the latest, on April 21, 2014, September 30, 2014, October 31, 2014, and December 31, 2014.

This action was filed on February 18, 2014, in state court, and subsequently removed to this court. (ECF No. 1). Plaintiffs named John Does as defendants in the original Complaint. *Id.* Plaintiffs contend that in April 2014, they attempted to seek the identity of the John Doe defendants, but the Defendants delayed responding to the Plaintiffs' discovery requests until January 23, 2015, and February 18, 2015. Plaintiffs contend that, after learning the names of the Moving Defendants, they sought leave to amend their complaint, and the Second Amended Complaint was filed on April 7, 2015. Plaintiffs contend that they are entitled to equitable tolling of the statute of limitations. The parties agree that the FDCPA provides for a one year statute of limitations. *See* 15 U.S.C. § 1692k(d) (time to sue on violations of FDCPA runs from the date of the violation).

Rule 15(c) of the Federal Rules of Civil Procedure provides that some amendments may relate back to the original filing date if certain conditions are met, thus avoiding a statute of limitations bar. Under Rule 15(c)(1)(C), when a new party is brought in by amendment, the amendment relates back to the date of the original complaint if (1) the claim arises out of the same conduct, transaction, or occurrence set forth in the original complaint; (2) within the time for service of the original complaint, the new party "received such notice of the action that it will not be prejudiced in defending on the merits"; and (3) the new party "knew or should

have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C).

There is no question that the Second Amended Complaint relates to the same transaction set forth in the original complaint. · Thus, the primary focus here is whether the second and third elements of Rule 15(c) have been complied with. In this regard, courts have generally examined the facts of each case to ascertain whether application of the relation back doctrine would be inconsistent with the notice safeguards of Rule 15(c)(1) and (c)(2). *See* 3 J. Moore, Moore's Federal Practice ¶ 15.15 (2d ed.1983).

 Here, Plaintiffs did not mistakenly name John Does for the Moving Defendants as contemplated by Rule 15(c)(3). They simply did not know who the correct defendants were at the time they filed their original complaint. Naming unknown, fictitious, or John Doe defendants in a complaint does not toll the statute of limitations until such time as the names of these parties can be secured. Instead, it amounts to a change of parties under Fed. R. Civ. P. 15(c) and the newly named defendant sought to be substituted for the previously unknown defendant becomes a new party. It is well-settled in this circuit that plaintiffs should not be permitted to amend their complaint to remove the John Doe defendants and substitute real parties, because their lack of knowledge of the proper defendants is not considered a "mistake" under Rule.15(c)(3). *See Locklear v. Bergman & Beving AB,* 457 F.3d 363, 366–67 (4th Cir.2006). "It would pro-

duce a paradoxical result wherein a plaintiff with no knowledge of the proper defendant could file a timely complaint naming any entity as a defendant and then amend the complaint to add the proper defendant after the statute of limitations had run. In effect, this would circumvent the weight of federal case law holding that the substitution of named parties for "John Doe" defendants does not constitute a mistake pursuant to Rule 15(c)(3)." *Id.* As to the Moving Defendants named for the first time in the Second Amended Complaint, the statute of limitations has run.

 Plaintiffs do not address Rule 15, and instead argue only that they are entitled to equitable tolling. "The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Burnett v. N.Y. Cent. R.R. Co.,* 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965)). Equitable tolling is appropriate in two circumstances: first, when "the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant," and second, when "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir. 2000) (internal quotation marks omitted). Equitable tolling is a rare remedy available only where the plaintiff has "exercise[d] due diligence in preserving [her] legal rights." *Chao v. Va. Dep't of Transp.,* 291 F.3d 276, 283 (4th Cir.2002) (quoting *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)).[6]

---

**6.** The court notes that equitable tolling is inapplicable to jurisdictional limitation periods, unlike statutes of limitations. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S.·385, 397, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (stating that consideration of an equitable tolling

argument would be "gratuitous" if a time limitation were jurisdictional); *Hunt v. Schweiker,* 685 F.2d 121, 123 (4th Cir.1982) (whether time limitation is subject to equitable tolling depends on whether it is jurisdictional or a statute of limitations). There is

Equitable tolling applies only in "those rare instances where—due to circumstances external to the [Plaintiffs'] own conduct—it would be unconscionable to enforce the limitation against the [Plaintiffs']." *Harris*, 209 F.3d at 330. To do so, Plaintiffs must show that "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the [Plaintiffs'] claim, and (2) the [Plaintiffs] failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Supermarket of Marlinton Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir.1995). In order to satisfy the first element of this test, Plaintiffs must present evidence of affirmative "acts of concealment [by Defendants]." *Id.* at 125 (internal citation omitted).

At the hearing, Plaintiffs candidly acknowledged that there was no alleged misconduct by defendants to thwart the discovery of the Moving Defendants' identity. Yet, Plaintiffs argued that this motion should not be granted until discovery regarding the agency relationship amongst the defendants was completed. Here, however, while further discovery may help the parties in determining the agency relationship, if any, between the defendants, it will not add anything to the equitable tolling argument. Moreover, Plaintiffs have not alleged due diligence on their part. Plaintiff never raised this issue, and in fact, Plaintiffs did not object to the stay of the deadlines. Thus, "the delay in naming the John Doe defendants is attributable to Plaintiffs, not to any affirmative act of concealment by the Defendants. Accordingly, the Court will not equitably toll the statute of limitations on the FDCPA claims, and Plaintiffs' claims under the FDCPA against these Defendants are dismissed. Further, because the remaining breach of contract claim has not been asserted against the Moving Defendants, the Moving Defendants are dismissed.

**IV. Conclusion**

Based on the foregoing, on Defendant Green Tree's Motion to Dismiss (ECF No. 50) is **GRANTED,** and Plaintiffs' wrongful death and survival claims are **DISMISSED.** Defendants Maintain It Now, LLC, and James Dean's Motion to Dismiss (ECF No. 59) is also **GRANTED,** and Defendants Maintain It Now, LLC, and James Dean are **DISMISSED from this action.**

some precedent from other jurisdictions holding that the FDCPA's statute of limitations is a jurisdictional bar. *See Mattson v. U.S. West Commc'ns, Inc.*, 967 F.2d 259, 262 (8th Cir. 1992) (describing FDCPA's statute of limitations as "a jurisdictional statute"). However, the holding in *Mattson* has been criticized by other courts. *See, e.g., Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 n. 14 (9th Cir.2009) (opining that *Mattson's* holding "was made without any real analysis"); *Johnson v. Riddle*, 305 F.3d 1107, 1115 (10th Cir. 2002) (recognizing that it was unnecessary to decide whether FDCPA's statute of limitations is jurisdictional, but noting that *Mattson* is "dubious authority," and the sole case on which *Mattson* relied has since been overruled by the Sixth Circuit"); *Marshall–Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 327 (7th Cir.2000). Neither the Fourth Circuit nor the United States Supreme Court has held that the FDCPA's statute of limitations is jurisdictional. Because the court concludes that Plaintiffs have failed to establish circumstances necessary for the application of equitable tolling, it is unnecessary to determine whether equitable tolling applies to Plaintiffs' FDCPA claims.